[No. 46025.  En Banc.  October 25, 1979.]

CLALLAM COUNTY DEPUTY SHERIFF'S GUILD, ET AL, *Respondents,* v. THE BOARD OF CLALLAM COUNTY COMMISSIONERS, ET AL, *Appellants.*

*Grant S. Meiner, Prosecuting Attorney,* and *Craig D. Knutson, Deputy,* for appellants.

*Clinton, Fleck, Glein & Brown* and *Lawrence B. Linville,* for respondents.

*Maureen J. Dightman* on behalf of Association of Washington Cities and *Robert E. Beaty* on behalf of Washington Association of Counties, amici curiae.

*Slade Gorton, Attorney General,* and *Richard A. Heath* and *James K. Pharris, Assistants.*

BRACHTENBACH, J.—The Board of Clallam County Commissioners (Board) has a dispute with the county deputy sheriffs who are represented by a deputy sheriffs' guild (Guild). The county voters had adopted a Home Rule Charter pursuant to Const. art. 11, § 4 (amendment 21). The charter mandated adoption of a personnel system for county employees, including deputy sheriffs. The Board adopted an ordinance to establish such a system. An alleged conflict between the county ordinance and the civil service for sheriffs' office act, RCW 41.14, led to this action.

The trial court enjoined use of the county ordinance to set salaries or determine employment of deputy sheriffs. Later it ordered the parties to enter into binding arbitration. We reverse.

More facts are needed to outline the issues. To comply with the Home Rule Charter's mandate, the Board enacted ordinance No. 80, which was codified as Clallam County Code §§ 3.08.010–.060 (1977). Ordinance No. 80 generally establishes a county personnel system under the supervision of a county "personnel director." The director is responsible to the county commissioners and supervises a career service for all county employees, including deputy sheriffs. Clallam County Code § 3.08.050 outlines the director's powers, which include: preparing and administering personnel policies; establishing a roster of all county employees; developing affirmative action programs; developing a safety management program; investigating the operation of the personnel policies; preparing personnel forms; and preparing annual personnel system reports. Under Clallam County Code § 3.08.060, vacancies are filled competitively.

The Board supplemented ordinance No. 80 with resolution No. 11, which established job selection criteria and a graduated pay scale, and resolution No. 20, which classified

county employees by job description and set 1978 salaries.

About this same time, the Guild was bargaining with the Board for 1978 employment contracts. The Board offered the Guild the salaries and job classifications listed in resolution No. 20.

Dissatisfied with this offer, the Guild filed an unfair labor practice complaint with the Public Employment Relations Commission. *See* RCW 41.56. The record before us does not report the status or outcome of this complaint.

To express further dissatisfaction with the offer, the Guild filed this declaratory judgment action in February 1978. The Guild argued, and the trial court agreed that ordinance No. 80 conflicted with the civil service for sheriffs' office act, RCW 41.14, thereby violating the supremacy clause of the state constitution. The trial court enjoined the Board's use of ordinance No. 80 for determining the salaries or employment of deputy sheriffs. The Board timely filed a notice of appeal from this ruling on June 26, 1978.

When the Board and the Guild resumed collective bargaining, the Board again offered only the salaries delineated in resolution No. 20. The Guild then moved the trial court on November 2, 1978, for an order of binding arbitration. It admitted that it had no statutory right to binding arbitration, but claimed to have an equitable one.

The trial court granted the Guild's motion for binding arbitration. It ruled that the Clallam County deputy sheriffs' equal protection rights were violated by RCW 41.56-.430–.490's limitation of binding arbitration to statutorily defined "uniformed personnel", RCW 41.56.030(6), *i.e.,* law enforcement officers employed by King County or cities with at least a 15,000 population. *See Yakima County Deputy Sheriff's Ass'n v. Board of Comm'rs,* 92 Wn.2d 831, 601 P.2d 936 (1979). The Board timely filed a notice of appeal from this decision on December 7, 1978.

The two appeals, since they in fact arose from the same litigation, were consolidated by the Court of Appeals. We accepted direct review under RAP 4.2.

## I

■■ We first consider whether this action is proper under the Uniform Declaratory Judgments Act, RCW 7.24. The act is designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." RCW 7.24.120; *King County v. Boeing Co.,* 18 Wn. App. 595, 601–02, 570 P.2d 713 (1977). However, absent issues of major public importance, a "justiciable controversy" must exist before a court's jurisdiction may be invoked under the act. *Port of Seattle v. State Util. & Transp. Comm'n,* 92 Wn.2d 789, 806, 597 P.2d 383 (1979); *Diversified Indus. Dev. Corp. v. Ripley,* 82 Wn.2d 811, 814–15, 514 P.2d 137 (1973). The Board and the Guild dispute whether such a controversy exists about ordinance No. 80's alleged unconstitutional conflict with RCW 41.14.

A "justiciable controversy" is

(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

*Seattle School Dist. 1 v. State,* 90 Wn.2d 476, 489–90, 585 P.2d 71 (1978); *Ronken v. Board of County Comm'rs,* 89 Wn.2d 304, 310, 572 P.2d 1 (1977); *Diversified Indus. Dev. Corp. v. Ripley, supra* at 815.

The Board says that elements (1) and (3) are missing by arguing that the dispute about ordinance No. 80's conflict with RCW 41.14 is speculative and involves only the Guild's potential interests. The Board concedes that some provisions of ordinance No. 80 overlap with RCW 41.14's coverage of deputy sheriff selection, promotion and termination. However, it claims that, as long as those provisions are not enforced, no real dispute about the overlap exists

and thus no justiciable controversy exists under the Uniform Declaratory Judgments Act.

We are not convinced by the Board's argument. A real dispute is readily germinating from the overlapping personnel systems of ordinance No. 80 and RCW 41.14. Confronted with two potentially conflicting personnel systems, the deputy sheriff members of the Guild have a direct and substantial interest in securing relief from the uncertainty of their legal rights and obligations.

Moreover, this case raises an important constitutional question about the supremacy of state law. Because a judicial opinion will benefit the public, other branches of government and, in particular, other Home Rule Charter counties, a declaratory judgment to resolve this constitutional question is proper. *See Seattle School Dist. 1 v. State, supra* at 490; *State ex rel. Distilled Spirits Institute, Inc. v. Kinnear,* 80 Wn.2d 175, 178, 492 P.2d 1012 (1972); *see also* Bjorge, *Standing to Sue in the Public Interest: The Requirements to Challenge Statutes and Acts of Administrative Agencies in the State of Washington,* 14 Gonz. L. Rev. 141, 161–65 (1978).

## II

We now consider whether ordinance No. 80 conflicts with RCW 41.14, thereby violating the supremacy clause of the state constitution. We begin by noting that Const. art. 11, § 4 (amendment 21), the provision on which the Guild relies and on which the trial court based its ruling, is the Home Rule amendment and is not the relevant constitutional provision for questions of state law supremacy over county or municipal law. Rather, Const. art. 11, § 11 is the state supremacy clause, and provides:

> Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws.

*See State ex rel. Schillberg v. Everett Dist. Justice Ct.,* 92 Wn.2d 106, 108, 594 P.2d 448 (1979).

■ To determine whether ordinance No. 80 is preempted under the state supremacy clause, we must examine the statute with which it is said to conflict, RCW 41.14. A statute, such as RCW 41.14, will not be construed as limiting the power of a county to legislate concurrently in a particular area unless it clearly expresses such an intent. *State ex rel. Schillberg v. Everett Dist. Justice Ct., supra* at 108.

> If the legislature is silent as to its intent to occupy a given field, resort must be had to the purposes of the legislative enactment and to the facts and circumstances upon which the enactment was intended to operate.

*Lenci v. Seattle,* 63 Wn.2d 664, 669–70, 388 P.2d 926 (1964).

■ The legislature enacted RCW 41.14 to establish a merit system of employment for deputy sheriffs. RCW 41.14.010. A 3–member deputy sheriffs' civil service commission is created in each county. RCW 41.14.030. The civil service commission's extensive powers and duties are defined in RCW 41.14.060 and include the making of rules and regulations about examinations, appointments, promotions, transfers, reinstatements, demotions, suspensions and discharges, and which rules and regulations "may also provide for any other matters connected with the general subject of personnel administration". Pursuant to this power, the Clallam County commission has promulgated extensive rules and regulations. *See* Clallam County Civil Service Commission for Clallam County Sheriff's Department, *Rules and Regulations.*

Under RCW 41.14.060, the commissions also have the responsibilities of formulating and giving tests; making investigations and inspections; conducting hearings; determining appeals; certifying eligible applicants for job vacancies; and keeping records. However, under RCW 41.14.140, the civil service commissions explicitly are prohibited from fixing deputy sheriffs' salaries. That power resides in the "appointing power," *i.e.,* the county sheriff, with the consent of the board of county commissioners. *See* RCW 41.14.020(2).

A full reading of RCW 41.14 reveals that in its enactment the legislature intended to preempt the coverage by county personnel systems of deputy sheriffs' selection, promotion and termination. This conclusion is bolstered by a comparison of RCW 41.14 with the civil service for city firemen act, RCW 41.08, and the civil service for city police act, RCW 41.12.

RCW 41.08 creates a civil service system for city firemen except when "local charter or regulations substantially accomplish the purpose of this chapter." RCW 41.08.010. Similarly, RCW 41.12 includes the same proviso when creating a civil service system for city police. RCW 41.12.010. However, RCW 41.14 contains no such language, although it is similar in most other respects to RCW 41.08 and 41.12. The omission of a similar provision from a similar statute usually indicates a different legislative intent. 2A C. Sands, *Statutes and Statutory Construction* § 51.02, at 290–91 (4th ed. 1973).

Moreover, the legislature in 1977 considered a bill which the House Committee on Local Government had amended so that RCW 41.14 "shall not apply in any county having adopted a home rule charter". *See Printed Bills of 45th Sess.* [1977], Senate No. 2112. The bill and amendment were tabled ultimately in the Senate Rules Committee. *See* Sub. S.B. 2112 in *Legislative Digest & History of Bills* [1977], at page 47. Although this bill never came to a vote before the entire legislature, the fact that it was tabled "has some probative value relative to the legislature's intent." *In re Bale,* 63 Wn.2d 83, 89, 385 P.2d 545 (1963).

We hold under the state supremacy clause that, where they conflict, RCW 41.14's merit system of employment for deputy sheriffs preempts the application of ordinance No. 80's personnel system to Clallam County deputy sheriffs. We recognize, however, that not every provision of ordinance No. 80 necessarily conflicts with and is preempted by RCW 41.14; RCW 41.14 is offended only by those provisions of ordinance No. 80, if any, that purport to regulate the existing merit system of employment of deputy sheriffs.

We note that RCW 41.14's merit system of employment does not regulate the fixing of deputy sheriffs' salaries. RCW 41.14.140. Therefore, to the extent that ordinance No. 80 purports to regulate the fixing of salaries for deputy sheriffs, it neither conflicts with RCW 41.14 nor offends the state supremacy clause.

The trial court ruled that RCW 41.14 preempted ordinance No. 80 in its entirety and enjoined its use by the Board when employing deputy sheriffs or setting their salaries. We reverse the trial court on this point. We remand to the trial court to determine which provisions of ordinance No. 80, if any, conflict with RCW 41.14 (and its accompanying Clallam County deputy sheriffs' civil service commission rules and regulations), and which provisions, if any, do not apply to Clallam County deputy sheriffs.

### III

Finally, we consider whether the trial court had authority to grant the Guild's motion for binding arbitration. This court may raise at any time the question of jurisdiction. RAP 2.5(a); *see* CR 12(h)(3). We hold that the trial court was without jurisdiction to hear or grant the Guild's motion for binding arbitration.

The trial court entered its declaratory judgment on June 20, 1978, and the Board timely appealed that ruling on June 26, 1978. The Guild did not move for binding arbitration until November 2, 1978. In granting the Guild's motion on November 17, 1978, the trial court ruled that the order it was then entering was "to have legal effect independent of [its] Findings of Fact and Conclusions of Law and Orders entered on June 20, 1978."

Pursuant to RAP 6.1, the appellate courts "accepted review" of this case on June 26, 1978, because on that date the Board timely filed its notice of appeal with the Court of Appeals. Thus, when the Guild made its November 1978 motion before the trial court, appellate review already had been accepted.

RAP 7.2 governs the authority of a trial court after acceptance of appellate review. Except for the limited circumstances outlined in RAP 7.2(b)–(j), the trial court has no authority to act after a notice of appeal is filed. *See Sanwick v. Puget Sound Title Ins. Co.*, 70 Wn.2d 438, 445, 423 P.2d 624, 38 A.L.R.3d 315 (1967); *Phillips v. Wenatchee Valley Fruit Exch.*, 124 Wash. 425, 428, 214 P. 837 (1923).

The only exception pertinent here is RAP 7.2(b), which allows a trial court to enforce its decision. However, the trial court's order of binding arbitration in this case, which has "independent legal effect," is not designed to enforce its declaratory judgment. The binding arbitration order does nothing to invigorate the earlier declaratory judgment and, in fact, the record indicates that it concerns an entirely separate legal issue.

The trial court specifically stated that the relief of binding arbitration was "based upon the record *in toto* and not upon the Court's Findings of Fact, Conclusions of Law and Orders of Declaratory Judgment and Injunction entered on June 20, 1978." Thus, the court was making an independent judgment on a separate issue in a case already appealed. It was not enforcing its prior judgment.

Because appellate review was accepted before the Guild filed its motion for binding arbitration, the trial court had no authority to hear or grant the motion. Its binding arbitration order is reversed.

Reversed and remanded for proceedings that comply with this opinion.

UTTER, C.J., ROSELLINI, WRIGHT, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., and HAMILTON, J. Pro Tem., concur.