[No. 15667-5-I.   Division One.   August 11, 1986.]

JEROME BARNIER, ET AL, *Appellants,* v. THE CITY OF KENT, *Respondent.*

---

*Gary Sexton, John H. MacConaghy,* and *Keller & Mac-Conaghy,* for appellants.

*Blair Burroughs, Miles & Cogan, Thomas E. Kelly, Jr.,*

and *Preston, Thorgrimson, Ellis & Holman,* for respondent.

COLEMAN, J.—Jerome and Joyce Barnier appeal a judgment dismissing without prejudice their action for declaratory relief. We reverse the dismissal and remand for entry of a declaratory judgment consistent with this opinion.

Jerome and Joyce Barnier own approximately 10 acres of unimproved land in the city of Kent. On June 19, 1978, the Kent City Council adopted an ordinance which created Local Improvement District 283 (LID 283) in an area of Kent which included the Barniers' property. LID 283 included sewer, water, storm drainage, lighting, and road improvements.

On July 19, 1978, the Barniers filed suit challenging the formation of LID 283. After the Barniers started their lawsuit, the Legislature amended RCW 84.34 to allow owners of farm and agricultural land to exempt their property from special benefit assessments as long as they keep their land in farm and agricultural use. On July 31, 1979, the Barniers obtained a summary judgment declaring that they were entitled to this exemption. Thus, the Barniers' property was not subject to special benefit assessments imposed by LID 283 so long as the property remained designated as farm and agricultural land. Once the Barniers withdraw the land from this classification, however, the amount of the special benefit assessment, plus interest, becomes immediately due.

After the Barniers obtained the exemption, other property owners within LID 283 met with officials from the City of Kent to discuss ways to finance the LID now that the Barniers would not be contributing to the costs of it. In order to fund the LID, the City and these property owners entered into agreements by which each property owner would advance a pro rata share of the Barniers' assessment. If the Barniers' property was ever removed from farm and agricultural use, and if the City was able to collect from the Barniers the assessments that would then be due, the

property owners would be entitled to their pro rata share of all the money the City collected from the Barniers.

By June 1984, the LID construction was completed and the Kent City Council set a hearing to confirm the final assessment roll for LID 283. The final assessment roll listed $0 as the Barniers' share of the assessment, but indicated that the assessment would have been $349,986.20 if the property had not been entitled to the exemption. The Barniers were informed of this potential liability by a letter from the Kent Director of Public Works dated June 22, 1984. This letter also advised the Barniers that if they removed the land from its exempt classification, they would be liable for interest compounded annually at a rate equal to the average rate of inflation from the date of the creation of the LID to the date the land is withdrawn from its exempt classification.

On July 16, 1984, the Kent City Council adopted an ordinance confirming the final assessment roll for LID 283 and ratifying the execution of the advance agreements.

On July 25, 1984, the Barniers filed suit against the City of Kent and the property owners who had entered into the advance agreements. The complaint alleged two causes of action: (1) a statutory appeal of the City's confirmation of the final assessment roll, and (2) a request for declaratory relief as to the extent of the Barniers' liability and for damages. The trial court denied the statutory assessment appeal, dismissed the claim for damages, and dismissed without prejudice the request for declaratory relief, stating that the issues were not justiciable. The trial court also entered an alternative ruling in the event that an appellate court decided that the request for declaratory relief was justiciable. In its alternative ruling, the court concluded that (1) the advance agreements were legal, (2) the agreements did not release the Barniers from their liability for the assessment, (3) the letter dated June 22, 1984, was sufficient under RCW 84.34.320 to notify the Barniers of their potential liability, and (4) interest on the Barniers' potential liability could be assessed from the date of the creation

of LID 283.

The Barniers have appealed to this court, challenging only the dismissal[1] of their declaratory judgment action. The Barniers argue (1) the advance agreements are void as ultra vires; (2) the repayments to the property owners are barred by RCW 84.34.350, RCW 35.54.050, and article 8, section 7 of the constitution; (3) the advance agreements are not within the City's statutorily authorized options for funding LID 283; (4) the Barniers' liability for the assessment is discharged by the advance agreements; and (5) the interest charges assessed on the Barniers' liability are unauthorized by RCW 84.34.320. The respondents contend that the issue is not justiciable, or alternatively, the agreements are valid and do not discharge the Barniers' liability.

■ We first address whether the trial court erred in determining that the case does not present a justiciable controversy. Before the jurisdiction of a court may be invoked under the Uniform Declaratory Judgments Act, RCW 7.24,

> there must be a justiciable controversy: (1) which is an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

*Diversified Indus. Dev. Corp. v. Ripley,* 82 Wn.2d 811, 815,

---

[1] The trial court dismissed the action without prejudice. Under RAP 2.2(a)(3), a dismissal without prejudice is not appealable unless its effect is to determine the action and prevent a final judgment or to discontinue the action. *Munden v. Hazelrigg,* 105 Wn.2d 39, 711 P.2d 295 (1985).

The dismissal without prejudice herein does not determine the action and prevent a final judgment, as there is no bar to a subsequent suit. However, the practical effect of the order is to discontinue the action by deferring resolution of the issues until the property is removed from the exempt classification. Since the *Munden* court stressed that it is the practical effect of an order which determines its appealability, we hold that the dismissal without prejudice in this case discontinues the action and is, therefore, an appealable order.

514 P.2d 137 (1973); *see also DiNino v. State ex rel. Gorton*, 102 Wn.2d 327, 330–31, 684 P.2d 1297 (1984). However, where the case presents an issue of broad overriding public import, the court may consider the issue even though these four elements are not present. *See, e.g., Clallam Cy. Deputy Sheriff's Guild v. Board of Clallam Cy. Comm'rs*, 92 Wn.2d 844, 601 P.2d 943 (1979); *State ex rel. Distilled Spirits Inst. v. Kinnear*, 80 Wn.2d 175, 492 P.2d 1012 (1972); *State ex rel. O'Connell v. Dubuque*, 68 Wn.2d 553, 413 P.2d 972 (1966).

Respondents contend that the issues presented by this appeal are not justiciable because it is purely speculative as to when, if ever, the Barnier property will lose its exempt classification. They also argue that the statutory and case law may change in the intervening years, thereby affecting the interpretation of the advance agreements. The Barniers contend that the test for a justiciable controversy is met by the facts of this case and that it would be unfair to require them to wait until they withdraw their land from its present use to determine their liability for special benefit assessments. Alternatively, appellants argue that this case fits within the "public issue" exception to the justiciable controversy test because the Legislature has declared that "it is a fundamental policy of the state to protect agricultural lands as a major natural resource . . ." RCW 84.34-.300.

Essentially, the Barniers raise three types of challenges: (1) they challenge the City of Kent's authority to enter into and perform the terms of the advance agreements; (2) they argue that they are no longer liable for the assessment because it has been discharged by payment by the respondent property owners; and (3) they challenge the amount of interest they must pay if they remove the property from its present use classification. We conclude that each of these challenges is justiciable.

First, it is clear that the challenge to the formation of the advance agreements is not a hypothetical or speculative controversy. In general, a contract that is contrary to

the terms and policy of a statute is illegal and unenforceable. *Waring v. Lobdell,* 63 Wn.2d 532, 533, 387 P.2d 979 (1964); *Hederman v. George,* 35 Wn.2d 357, 362, 212 P.2d 841 (1949). A contract entered into by a municipality is within this rule. *Mincks v. Everett,* 4 Wn. App. 68, 72, 480 P.2d 230 (1971); 10 E. McQuillin, *Municipal Corporations* § 29.06, at 226 (3d ed. 1981). Furthermore, a contract entered into by a municipality will be void and unenforceable if it is ultra vires. *Chemical Bank v. WPPSS,* 99 Wn.2d 772, 797, 666 P.2d 329 (1983); *Noel v. Cole,* 98 Wn.2d 375, 378, 655 P.2d 245 (1982). In the present case, the advance agreements have been signed by both the City and the respondent property owners. All of the elements necessary to a determination of whether the agreements are illegal or ultra vires are already before us.

The question of whether the Barniers' liability is discharged by the advance agreements is also a real and existing controversy. Under this issue, we must determine whether the advance agreements have a present effect on the Barniers' potential liability for the assessment. The dispute is actual, present, and existing because the terms of the agreement are fixed; the existing agreement either discharges the potential liability or has no effect on it. Like the challenge to the City's authority to make the agreements, no further development of the facts is necessary for us to resolve the legal issue presented.

Finally, we conclude that the issue of interest on the potential assessment is justiciable, limited to the question of when interest begins to run on the Barniers' assessment. Although the total amount of interest will not be determinable until the land is removed from its present use, we can interpret the relevant statutes to fix the time when interest commences.

Since we have determined that this case presents justiciable issues, we now proceed to determine whether the trial court erred in entering its alternative ruling. The Barniers first argue that the advance agreements are ultra vires because they constitute a loan by the property owners to

the City, and the City is a municipal corporation of the second class which does not have the power to borrow money. The City contends that Kent is a noncharter code city with "all powers possible for a city or town to have under the Constitution of this state, and not specifically denied to code cities by law." RCW 35A.11.020. Such cities are expressly authorized to exercise "[p]owers of eminent domain, borrowing, taxation, and the granting of franchises . . . in the manner provided in this title or by the general law of the state where not inconsistent with this title . . ." RCW 35A.11.030.

The Barniers concede in their reply brief that Kent is a noncharter code city. *See* Kent City Code 1.04.04. They argue, however, that broad general powers to borrow and contract do not authorize even noncharter code cities to enter into these advance agreements, citing *Chemical Bank.*

■ The Barniers' argument under *Chemical Bank* regarding the City's implied powers, however, is not apposite, because it is clear that the City had the express power to incur indebtedness. Therefore, even if the advance agreements could be characterized as a loan to the City, they were not ultra vires.

The Barniers next argue that two statutes and a constitutional provision bar the future repayments to the property owners which are contemplated in the advance agreements. First, the Barniers assert that the repayments would be barred by RCW 84.34.350, which provides that when exempt land is withdrawn from its classification, the amount collected

> shall first be applied to the payment of general or special debt incurred to finance the improvements related to the special benefit assessments, and, if such debt is retired, then into the maintenance fund or general fund of the governmental entity which created the local improvement district, or its successor, for any of the following purposes: (1) Redemption or servicing of outstanding obligations of the district; (2) maintenance expenses of the district; or (3) construction or acquisition of any facilities necessary to carry out the purpose of the district.

The Barniers contend that this statute prevents the City from making the repayments to the respondent property owners because the repayments are not included within the uses mentioned in RCW 84.34.350. The City argues that the contingent liability to repay the respondent property owners is a "special debt" and therefore authorized by the statute.

"Special debt" is not defined in the statute. The City points to the "special fund doctrine" and argues that the "special debt" referred to in the statute is merely an obligation to pay the property owners out of the "special fund" of money the City may eventually collect from the Barniers. *See Winston v. Spokane,* 12 Wash. 524, 41 P. 888 (1895); 15 E. McQuillin, *Municipal Corporations* § 39.45 (3d ed. 1985). Absent a statutory definition, we look to general rules of construction. When terms are not defined by statute but have a well defined meaning at common law, the statutory term will be given the common law meaning. *Irwin v. Rogers,* 91 Wash. 284, 287, 157 P. 690 (1916). "Furthermore, common–law meanings are assumed to apply even in statutes dealing with new and different subject matter, to the extent that they appear fitting and in the absence of evidence to indicate contrary meaning." (Footnote omitted.) 2A N. Singer, *Statutory Construction* § 50.03, at 435 (4th ed. 1984).

Applying these general rules of construction, we agree with the City that the statutory term "special debt" is merely the counterpart of the common law term "special fund" and, therefore, we construe the terms together. Since the advance agreements involve a "special fund" to repay the respondents, the obligation incurred by the City would be a "special debt" under the statute.

The Barniers next assert that the repayments to the respondent property owners are barred by RCW 35.54.050, which provides: "If in any local improvement fund guaranteed by a local improvement guaranty fund there is a surplus remaining after the payment of all outstanding bonds and warrants payable therefrom, it shall be paid into the

local improvement guaranty fund." The Barniers contend that the amount that the City would collect from them if their liability materialized is a "surplus" which must be distributed in accordance with this statute.

As the respondents point out, however, the amounts which may be recovered from the Barniers would not go into the local improvement fund. Instead, the amount collected would be disbursed to the respondent property owners, pursuant to RCW 84.34.350, to repay a "special debt." Since the amount recovered from the Barniers would never go into the local improvement fund, it could never be a "surplus" under RCW 35.54.050.

Next, the Barniers argue that the repayments under the advance agreements constitute a gift of public funds contrary to article 8, section 7 of the constitution. They contend that the repayments will so greatly exceed the amount advanced by the property owners that the transaction will be a gift.

Const. art. 8, § 7 prohibits any county, city, town, or other municipal corporation from making a gift of public funds. For purposes of this constitutional provision, a gift is a transfer of property without consideration and with donative intent. *Louthan v. King Cy.*, 94 Wn.2d 422, 617 P.2d 977 (1980).

We conclude that the advance agreements do not violate the constitutional provision because no public funds are advanced under the agreements. The respondent property owners merely advance the Barniers' share of the assessment, with the possibility that they may later recoup the money if the Barniers in fact do pay.

The Barniers next argue that the advance agreements are invalid because they are not a statutorily authorized method of funding an LID. The City's power to fund local improvements, however, is not this narrowly prescribed.

Usually when a municipal corporation has power to make or provide for the making of improvements, it has power to make arrangements to meet the expense thereof. The mode of paying for public improvements is

sometimes prescribed by statute or charter, and such mode must necessarily be followed, but in the absence of express direction the method to be adopted is within the discretion of the proper municipal authorities.

(Footnotes omitted.) 13 E. McQuillin, *Municipal Corporations* § 37.57 (3d ed. 1971). In the present case, the relevant statutes do not impose an exclusive method of funding local improvements. In the absence of express direction, therefore, we must determine whether the City's general power to make local improvements is broad enough to allow the funding by the advance agreements.

Initially, it is clear that Kent, as a code city, has the authority to do anything allowed by the general statutes on local improvements. RCW 35A.43.010. Furthermore, these general statutes on local improvements contain broad statutory authority:

This and the following chapters relating to municipal local improvements shall supersede the provisions of the charter of any city of the first class.

. . .

The council of each city and town shall pass such general ordinance or ordinances as may be necessary to carry out their provisions and thereafter all proceedings relating to local improvements shall be conducted in accordance with this and the following chapters relating to municipal local improvements and the ordinance or ordinances of such city or town.

RCW 35.43.030. Therefore, although the advance agreements are not specifically authorized by statute, this broad general authority to implement the local improvement provisions by ordinance supports Kent's actions in ratifying and implementing the advance agreements by ordinance.

The Barniers next contend that their contingent liability under RCW 84.34.330 is discharged by the advance agreements entered into by the City of Kent and the respondent property owners. Specifically, they argue that once the respondent property owners advance the money to the City under the agreements, then the Barniers' potential obligation is discharged under RCW 35.49.110. This statute pro-

vides:

> Record of payment. If the amount of any assessment for a local improvement with interest, penalty, costs, and charges accrued thereon is paid to the treasurer before sale of the property in foreclosure of the lien thereon, the city or town treasurer shall mark it paid upon the assessment roll with the date of payment thereof.

As the respondents point out, however, there is no present obligation that can be extinguished under this statute. Until the Barniers or their successors in interest actually remove the land from its present classification, there is no lien on the property. Before that time, the property is "exempted" from the special benefit assessments. Thus, although the Barniers have a potential liability, there is no assessment that could be extinguished under RCW 35.49-.110 by the payments by the respondent property owners. The property owners are merely making up the shortfall of LID 283; they are not paying an existing obligation of the Barniers.

Finally, the Barniers contend that the trial court erred in determining that interest on the potential obligation could be assessed from the date of the creation of LID 283. The relevant statutes provide that interest on such obligations may be assessed "from the time the initial notice is filed by the governmental entity which created the local improvement district as provided in RCW 84.34.320 to the time the owner withdraws such land from the exemption category provided by this chapter". RCW 84.34.330(1). The initial notice informs owners of farm and agricultural lands of the formation of the LID and of the owners' potential liability.[2]

---

[2]RCW 84.34.320 provides in part: "Notice of the creation of a local improvement district that includes farm and agricultural land shall be filed with the county assessor and the legislative authority of the county in which such land is located. The county assessor, upon receiving notice of the creation of such a local improvement district, shall send a notice to the owner of the farm and agricultural lands listed on the tax rolls of the applicable county treasurer of: (1) the creation of the local improvement district; (2) the exemption of that land from special benefit assessments; (3) the fact that the farm and agricultural land may become

No notice of the creation of LID 283 was ever filed because the statute requiring such notice was passed after the LID was formed. By letter dated June 22, 1984, the Director of Public Works of the City of Kent informed the Barniers of their potential liability under RCW 84.34.330. In this letter, the City figured potential interest charges from June 19, 1978, the date the LID was formed. At trial, the court concluded that:

9. The City was not required to comply with the notice provisions contained in RCW 84.34.320 with respect to the creation of LID 283 since this statute was adopted after LID 283 was formed. The Barniers were not prejudiced by the absence of such notice.

. . .

12. In the event an appellate court decides that this issue is justiciable, this Court concludes that the letter sent by the City of Kent on June 22, 1984 was sufficient to meet the notice requirements contained in RCW 84.34.320.

13. In the event an appellate court decides that this issue is justiciable, the City of Kent's proposed inclusion of interest from the date of the creation of LID 283, in addition to the interim interest included in the final assessment levied against the property owned by the Barniers, would be lawful under with [sic] the provisions of RCW 84.34.330.

Appellants argue that even if they are liable for the principal amount of the assessment, the interest that the City proposes to assess is unauthorized. They contend that because no notice was ever filed under RCW 84.34.320, the City may not assess interest. Alternatively, they argue that notice was not filed until the June 22, 1984 letter from the City of Kent, and therefore interest may not be assessed before that date.

---

subject to the special benefit assessments if the owner waives the exemption by filing a notarized document with the governing body of the local government creating the local improvement district before the confirmation of the final special benefit assessment roll; and (4) the potential liability, pursuant to RCW 84.34.330, if the exemption is not waived and the land is subsequently removed from the farm and agricultural land status."

We agree with the City that interest is not foreclosed merely because the City failed to file notice under RCW 84.34.320. Failure to comply with a statutory notice requirement does not render an assessment invalid if the purpose of statutory notice is otherwise achieved. In such situations, noncompliance is without prejudice. *Pratt v. Water Dist. 79*, 58 Wn.2d 420, 422, 363 P.2d 816 (1961). In the present case, the letter sent by the City of Kent on June 22, 1984, was sufficient notice that the interest provisions of the statute were being invoked.

We agree with the Barniers, however, that interest should not be assessed from the date of the creation of the LID. Although the statutes indicate that interest should be computed from the time the initial notice of creation of the LID is filed, the statute contemplates that property owners will be notified of their liability concurrently with the creation of the LID. Since the notification and the creation of the LID occurred at different times in this case, we must determine which is the critical date as far as computing interest. After examining the statutes, we conclude that the important point in time is the notice to the Barniers, not the formation of the LID. Since we have found that the June 22, 1984 letter was sufficient notice to the Barniers that they would be liable for interest, we also adopt that date as the time when the City may begin to compute potential interest charges on the Barnier assessment.

In conclusion, we adopt the trial court's alternative conclusions, but we modify that portion dealing with the computation of interest. The order of dismissal without prejudice is reversed and the cause remanded for entry of a declaratory judgment consistent with this opinion.

RINGOLD, A.C.J., and WEBSTER, J., concur.