[No. 47647-5-I.   Division One.   January 28, 2002.]

GRANDMASTER SHENG-YEN LU, ET AL., *Appellants*, v. KING COUNTY, ET AL., *Respondents*.

94

*Kevin P. Sullivan* (of *Sullivan & Thoreson*) and *David A. Bricklin* (of *Bricklin & Gendler*), for appellants.

*Jerome L. Hillis, George A. Kresovich,* and *Joseph B. Genster* (of *Hillis Clark Martin & Peterson, P.S.*); *Diana S. Shukis* and *Alan L. Wallace* (of *Cairncross & Hempelmann, P.S.*); and *Norm Maleng, Prosecuting Attorney,* and *John F. Briggs* and *Michael Sinsky, Deputies,* for respondents.

Cox, J. — The Land Use Petition Act (LUPA) generally provides the exclusive means of judicial review of final land use decisions.[1] Here, Grandmaster Sheng-Yen Lu and others (the Neighbors) appeal dismissal of this declaratory judgment action. This action seeks an order directing King County to decide, prior to establishment of the final con-

[1] RCW 36.70C.030(1).

figuration of mining activities, whether a conditional use permit (CUP) will be required for a proposed mining project. Because LUPA provides an adequate alternative remedy and this case is not ripe for judicial review, the trial court did not abuse its discretion in dismissing the action. We affirm.

In 1998, King County, Weyerhaeuser, the state Department of Natural Resources (DNR), and others agreed to the development and ultimate donation for public use of certain property located in North Bend. In the agreement, Weyerhaeuser agreed to develop the property as a gravel mine using high performance standards to protect the environment. The agreement further provided that Weyerhaeuser will ultimately donate the land to be reclaimed from mining to DNR to be held in trust for the County. The project is intended to protect public views and ultimately transfer private land to long-term public ownership and forest use.

The subject property is located in a forest zoning district. Under the King County Code (KCC), mining operations are allowed on forestry lands if mining activities are more than "one-quarter mile from an established residence" and do not use local access streets that abut lots developed for residential use.[2] Otherwise, a CUP is required.

Cadman, Inc., is Weyerhaeuser's representative to implement the project. Cadman submitted to King County's Department of Development and Environmental Services (DDES) plans for mining the subject property at two sites. The "Lower Site" plans that Cadman submitted identified three improvements within one-quarter mile of a building on the property of Grandmaster Lu. They are a 3.8 acre pond, a noise berm, and a drainage swale.

DDES determined that, for purposes of the CUP ordinance, the building on Grandmaster Lu's property is an "established residence." DDES initially indicated that no CUP would be required for the project. DDES later modified

[2] KCC 21A.08.090(B)(9).

its position, indicating that it would decide whether a CUP was needed when the County published a Draft Environmental Impact Statement (DEIS). DDES has since indicated that a decision can be made only after the final proposed configuration of mining activities is established.

The Neighbors claim that the pond, berm, and drainage swale in the plans for the "Lower Site" are mining activities for purposes of the CUP ordinance. Cadman and Weyerhaeuser dispute this, contending that these improvements are either not part of their mining proposal or may never be constructed.

The County released to the public a DEIS that included a list of required licenses and permits for the project. It does not include a CUP, as recommended by the consultant hired by the County to prepare the proposed DEIS for the project. The DEIS analyzed four alternatives: (1) no action, (2) mining activities on upper and lower portions of the property, (3) a different configuration of mining activities on upper and lower portions of the property, and (4) mining activities only on the upper portion of the property. As Cadman pointed out to the County, under alternatives (1) and (4) of the DEIS Weyerhaeuser would not be obligated to donate the land at the lower site to DNR in trust for the County. Thus, the Neighbors argue that the County would be biased against those alternatives and would be inclined to permit alternatives (2) or (3) that would threaten the property of the Neighbors.

The Neighbors originally commenced a proceeding under LUPA challenging, among other things, the County's failure to decide whether Weyerhaeuser and Cadman must obtain a CUP. Weyerhaeuser, Cadman, and the County moved to dismiss that action. In response, the Neighbors moved for voluntary dismissal, which the court granted.

Shortly thereafter, the Neighbors commenced this declaratory judgment action. The County, Weyerhaeuser, and Cadman again moved for dismissal, which the trial court granted.

The Neighbors appeal.

### Declaratory Relief

Citing RCW 7.24.050, the Neighbors first argue that the trial court incorrectly refused to consider this action. They claim a present substantive ruling would "terminate the controversy or remove an uncertainty." We hold that the trial court properly exercised its discretion by dismissing the action.

■ The Declaratory Judgments Act (DJA) should be liberally interpreted in order to facilitate its socially desirable objective of providing remedies not previously countenanced by our law.[3] This principle has long been tempered by the requirement that a "justiciable controversy" exist before a court may substantively rule in such an action.[4] A justiciable controversy is:

> "(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."[5]

As we recently stated in *Neighbors & Friends of Viretta Park v. Miller*,[6] another way of stating the requirement is, "a claim is ripe for judicial determination if the issues raised are primarily legal and do not require further factual development, and the challenged action is final."[7]

■ One is not entitled to relief by way of a declaratory judgment if there is available a completely adequate alter-

---

[3] *Reeder v. King County*, 57 Wn.2d 563, 564, 358 P.2d 810 (1961).

[4] *Walker v. Munro*, 124 Wn.2d 402, 411, 879 P.2d 920 (1994).

[5] *First United Methodist Church of Seattle v. Hearing Exam'r*, 129 Wn.2d 238, 245, 916 P.2d 374 (1996) (quoting *First Covenant Church of Seattle v. City of Seattle*, 114 Wn.2d 392, 398, 787 P.2d 1352 (1990)).

[6] 87 Wn. App. 361, 940 P.2d 286 (1997), *review denied*, 135 Wn.2d 1009 (1998).

[7] *Neighbors & Friends*, 87 Wn. App at 383.

native remedy.[8] We review for abuse of discretion a refusal to consider a declaratory judgment action.[9] A trial court abuses its discretion only when its decision is manifestly unreasonable or based on untenable grounds.[10] A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.[11]

## Adequate Alternative Remedy

We first consider whether the Neighbors have available a completely adequate alternative to this declaratory judgment action. We hold that they have such a remedy in LUPA.

■ Generally, LUPA is the exclusive means of judicial review of land use decisions.[12] Turning first to that statute, there can be no serious dispute that the ultimate decision

---

[8] *Reeder*, 57 Wn.2d at 564 (Dismissing declaratory judgment action because writ of certiorari was available to plaintiffs and would have afforded them all relief to which they may have been entitled in the case.).

[9] *Wash. Fed'n of State Employees v. State*, 107 Wn. App. 241, 244, 26 P.3d 1003 (2001) (citing *Nollette v. Christianson*, 115 Wn.2d 594, 599, 800 P.2d 359 (1990)).

[10] *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

[11] *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

[12] RCW 36.70C.030(1) provides:

[LUPA] replaces the writ of certiorari for appeal of land use decisions and *shall be the exclusive means of judicial review of land use decisions*, except that this chapter does not apply to:

    (a) Judicial review of:

    (i) Land use decisions made by bodies that are not part of a local jurisdiction;

    (ii) Land use decisions of a local jurisdiction that are subject to review by a quasi-judicial body created by state law, such as the shorelines hearings board or the growth management hearings board;

    (b) Judicial review of applications for a writ of mandamus or prohibition; or

    (c) Claims provided by any law for monetary damages or compensation.

(Emphasis added.)

by DDES that is at issue here will be a "land use decision" within the meaning of the statute. That is because that final determination will be one on an application for governmental (County) approval before real property (the mine) may be developed, as specified in RCW 36-.70C.020(1).

Likewise, there can be no dispute that there has not yet been a final determination by DDES on the application. As the Neighbors' prior motion to dismiss the LUPA proceeding they commenced tacitly admits, such a proceeding would be premature before DDES makes a final decision.

██ ██ Much of the Neighbors' argument that their request for declaratory relief is proper is premised on the assumption that LUPA could not provide adequate relief at the appropriate time. But the lack of a final decision by DDES at this time does not necessarily render a LUPA proceeding less than a completely adequate alternative to this request for declaratory relief.

In reviewing the statutory framework of LUPA, we note that the Legislature has carefully defined "land use decision" in terms of a *final* determination by the relevant body or officer with the highest level of authority to make the determination.[13] This legislative choice of words must mean something. We conclude that the most reasonable meaning to give to this legislative choice is to conclude that courts should generally defer review of decisions involving the use of land until such decisions are final—that is when the highest body or officer has finally acted.

Our decision in *Ward v. Board of Skagit County Commissioners*[14] is consistent with this view. There, property owners sought judicial review under LUPA of the administrative denial of a zoning variance and special use permit. Our court reviewed the statutory language of LUPA and held that in order to obtain a final determination one must,

---

[13] RCW 36.70C.020(1).

[14] 86 Wn. App. 266, 936 P.2d 42 (1997).

by necessity, exhaust one's administrative remedies.[15] Our court further noted that exhaustion of such remedies is a prerequisite to judicial review.

Moreover, the purpose section of LUPA declares that:

[t]he purpose of this chapter is to reform the process for judicial review of land use decisions made by local jurisdictions, by establishing uniform, expedited appeal procedures and uniform criteria for reviewing such decisions, in order to provide consistent, predictable, and timely judicial review.[16]

In view of the above express statutory language and the relevant case law, we conclude that courts should generally defer to local jurisdictions until a final determination on the use of land is made by the highest body or officer. Once made, that decision is subject to judicial review according to the procedures outlined in the purpose section of the statute. To hold otherwise would risk premature judicial intrusion into land use decisions. Thus, the Neighbors must show that this case warrants court intervention in advance of a final decision by DDES.

The Neighbors argue that *Chelan County v. Nykreim*[17] supports their claim that declaratory relief, not LUPA, is proper here. There, Division Three of this court concluded that LUPA is the exclusive means of reviewing quasi-judicial decisions, but not of ministerial decisions. The Neighbors claim here that the decision that DDES will make is ministerial and thus reviewable by means other than LUPA.

We disagree with the conclusion in *Nykreim*. We hold that LUPA provides the exclusive means of review for land use decisions, whether they are quasi-judicial or ministerial.

In *Nykreim*, the court reviewed a declaratory judgment action in which Chelan County asked the superior court to declare invalid a certificate of exemption the County had

---

[15] *Ward*, 86 Wn. App. at 270.

[16] RCW 36.70C.010.

[17] 105 Wn. App. 339, 20 P.3d 416, *review granted*, 144 Wn.2d 1016 (2001).

granted and then withdrawn in a boundary line adjustment application.[18] Concluding that LUPA "is the exclusive means of review of quasi-judicial decisions, not ministerial decisions,"[19] the court held that "[a]ggrieved parties may challenge an invalid ministerial decision granting a boundary line adjustment when there is no showing that the party had an obligation to exhaust other administrative remedies that would result in a final 'land use decision' reviewable only under LUPA."[20]

In our view, that conclusion is contrary to the plain language of the statute. We approach our reading of LUPA with the principle in mind that we construe statutes as a whole to give effect to all language and to harmonize all provisions.[21] The *Nykreim* court's conclusion renders superfluous language contained in RCW 36.70C.120, the section of LUPA governing the scope of judicial review of land use decisions:

> (1) When the land use decision being reviewed was made by a quasi-judicial body or officer who made factual determinations in support of the decision, . . . judicial review of factual issues and the conclusions drawn from the factual issues shall be confined to the record created by the quasi-judicial body or officer, except as provided in subsections (2) through (4) of this section.
>
> . . . .
>
> (3) *For land use decisions other than those described in subsection (1) of this section,* the record for judicial review may be supplemented by evidence of material facts that were not made part of the local jurisdiction's record.[22]

If judicial review under LUPA were limited to decisions made by quasi-judicial bodies, all LUPA review would be governed by RCW 36.70C.120(1). There would be no need to

---

[18] *Nykreim*, 105 Wn. App. at 343.

[19] *Nykreim*, 105 Wn. App. at 361.

[20] *Nykreim*, 105 Wn. App. at 362-63.

[21] *City of Seattle v. Fontanilla*, 128 Wn.2d 492, 498, 909 P.2d 1294 (1996).

[22] (Emphasis added.)

provide for land use decisions "other than [quasi-judicial decisions]," as the Legislature expressly did in RCW 36.70C.120(3). The only way to give effect to the language in this latter statute is to hold that LUPA review is not limited to review of quasi-judicial decisions. Thus, the ministerial action of DDES in making a final decision on whether or not to require a CUP permit or to issue a grading permit in this case is subject to review exclusively under LUPA. Accordingly, LUPA is an adequate alternative remedy here.

The Neighbors also argue that LUPA would not provide an adequate alternative remedy if the County issued a grading permit without making a final decision on the CUP. This argument is wholly unpersuasive.

The statutes require the County to determine whether the proposed use conforms with the zoning code when it reviews grading permit applications. KCC 21A.02.040 states that:

(A) No use or structure shall be established, substituted, expanded, constructed, altered, moved, maintained, or otherwise changed except in conformance with this title.

KCC 21A.42.010 states that:

The following actions shall be subject to administrative review for determining compliance with the provisions of this title and/or any applicable development conditions which may affect the proposal:

(A) Building permits;

(B) Grading permits; and

(C) Temporary use permits.

If the County later fails to follow these statutes, particularly after making the representations it has made to the courts in this case that it must follow these statutes, the Neighbors presumably have an issue they may litigate in a LUPA proceeding. In short, the Neighbors again fail to show that LUPA would not be an adequate alternative remedy.

The Neighbors further argue that the County is required to have made the CUP determination at certain points in

the grading permit application process that have passed and has failed to do so. In support, they cite to RCW 36.70B.070, which states that within 28 days after receiving an application, the County must provide a written statement to a project permit applicant that states either that the application is complete or that the application is incomplete, listing what is lacking. The statute explains that an application may be complete if it "is sufficient for continued processing even though additional information may be required or project modifications may be undertaken subsequently."[23]

The Neighbors also cite WAC 197-11-440, which states that an environmental impact statement must contain a fact sheet listing "all licenses which the proposal is known to require." They also rely on RCW 36.70B.030, which requires that a local government or reviewing body determine whether development regulations applicable to the proposed project or an adopted comprehensive plan define, among other things, the type of land use permitted at the site, including conditional uses.

Finally, during oral argument, the Neighbors argued that the County's failure to determine that a CUP is needed violates RCW 36.70B.110, which requires local governments planning under the Growth Management Act to provide a notice of application to the public within 14 days after the determination of completeness required by RCW 36.70B.070, including "identification of other permits not included in the application to the extent known by the local government."[24]

Assuming without deciding that the Neighbors are correct in their assertions, that does not make LUPA an inadequate alternative remedy. These factual and legal issues may be addressed in a LUPA proceeding at the appropriate time.

The Neighbors next argue that even if a LUPA action were available to challenge the decision to issue the grading

permit without addressing the CUP, that remedy would be inadequate because it would be unnecessarily harsh and stringent. We disagree.

■ Citing *Sorenson v. City of Bellingham*,[25] they argue that declaratory relief can be available if the only alternative remedy available would be an unnecessarily harsh or stringent remedy. There, the court announced that where the alternate remedy was "the harsh remedy of blocking or overturning an election, thereby jeopardizing a needed charter review" the alternative remedies to a declaratory judgment were not adequate.[26]

Obviously, this situation is quite different from the facts of that case. Requiring a party to file security as a condition of a stay in a LUPA proceeding is not uncommon. And it does not rise to the level of either overturning an election or avoiding a needed charter review. The principle of *Sorenson* has no application here.

■ On similar grounds, we reject the Neighbors' attempt to use CR 57 to support their claim here. That rule states that "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."[27] Our Supreme Court has approved limited use of this exception.[28] Moreover, in *Wagers v. Goodwin*,[29] we held that where the only alternative remedy was a motion to reopen an original dissolution judgment, a remedy granted only under extraordinary circumstances, the case fit into this category of exceptions.[30]

---

[25] 80 Wn.2d 547, 496 P.2d 512 (1972).

[26] *Sorenson*, 80 Wn.2d at 559.

[27] CR 57.

[28] *Ronken v. Bd. of County Comm'rs*, 89 Wn.2d 304, 310, 572 P.2d 1 (1977) ("CR 57 provides in part: 'The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.' . . . Still, the courts will be circumspect in granting such relief.").

[29] 92 Wn. App. 876, 964 P.2d 1214 (1998).

[30] *Wagers*, 92 Wn. App. at 882.

The lesson of these cases is that while declaratory relief may be available if the court finds that the other available remedies are unsatisfactory, such situations justifying exceptional treatment are very rare. This case is not one of those rare exceptions. Because LUPA provides an adequate alternative means of review, declaratory relief is not proper.

■ The Neighbors, citing the *Washington Real Property Deskbook*, argue that a declaratory judgment action is still available in some land use cases, even after passage of LUPA. Whether or not that is true, the Neighbors fail to show here that declaratory relief is proper because LUPA is an inadequate alternative remedy.

Finally, the Neighbors cite to case law from other jurisdictions that, they argue, holds that declaratory judgment suits are authorized "to challenge a government agency's failure to enforce its own laws." Such case law is not useful in this context. Our Legislature has created the LUPA framework for deciding land use questions in this state. The case law and texts from other jurisdictions do not aid us in determining whether LUPA provides an adequate alternative remedy in this case.

## Ripeness

The County, Cadman, and Weyerhaeuser also argue that this case is not ripe for review and that no justiciable controversy exists yet. We agree.

■ "[A] claim is ripe for judicial determination if the issues raised are primarily legal and do not require further factual development, and the challenged action is final."[31] The action challenged here is not final. The County has not yet decided whether to grant the permit or whether a CUP is required. Thus, one of the required elements for justiciability is not present.

When the environmental review is completed Cadman will, presumably, make final decisions about which alterna-

---

[31] *Neighbors & Friends,* 87 Wn. App. at 383.

tives to pursue. It is possible that Cadman will choose one of the mining alternative plans that does not include mining activities within one-quarter mile of the Lu residence. The dispute the Neighbors present is not primarily legal. Rather, it is highly factual. It is not ripe.

The Neighbors argue that the finality requirement does not mean that a final administrative decision is required before the court can consider declaratory judgment. They rely on language that ripeness depends on " 'the fitness of the issues for judicial decision and the hardship to the parties of withholding consideration.' "[32] In another case they cite, the court considered declaratory judgment motions where "[a]ll of the elements necessary to a determination" of the legality of the action questioned were already before the court, even though the special assessment the plaintiffs were contesting had not taken place and might not take place for many years.[33]

In *Arnold v. Department of Retirement Systems*,[34] the court held that a justiciable controversy existed where Arnold filed suit to determine whether the statute barring her from receiving retirement benefits from her ex-husband's retirement program was unconstitutional.[35] Despite the acknowledged fact that Arnold would not be eligible to receive the benefits, if allowed, unless her ex-husband predeceased her, an event which had not occurred, the court held that her entitlement to benefits presented an existing. dispute between parties with genuine and opposing interests.

The Neighbors also point to the holding in *Clallam County Deputy Sheriff's Guild v. Board of Clallam County*

---

[32] *First United Methodist Church*, 129 Wn.2d at 245 (quoting *First Covenant*, 114 Wn.2d at 399).

[33] *Barnier v. City of Kent*, 44 Wn. App. 868, 874, 723 P.2d 1167 (1986).

[34] 74 Wn. App. 654, 875 P.2d 665 (1994), *rev'd on other grounds*, 128 Wn.2d 765, 912 P.2d 463 (1996).

[35] *Arnold*, 74 Wn. App. at 660-61.

*Commissioners*[36] to support their argument. In that case, the sheriff's guild asked the court to determine that a county ordinance that created a county personnel system conflicted unconstitutionally with a state statute.[37] As the Neighbors state, the court based its decision that there was a justiciable controversy even before the allegedly conflicting portions of the ordinance were enforced at least in part on its finding that "the deputy sheriff members of the Guild ha[d] a direct and substantial interest in securing relief from the uncertainty of their legal rights and obligations."[38] The court also declared that:

> this case raises an important constitutional question about the supremacy of state law. Because a judicial opinion will benefit the public, other branches of government and, in particular, other Home Rule Charter counties, a declaratory judgment to resolve this constitutional question is proper.[39]

The simple answer to the Neighbors' reliance on these cases is that they are distinguishable. The legal issue in *First United Methodist Church*,[40] *Arnold*, and *Deputy Sheriff's Guild* was whether an ordinance or statute violated the Constitution, an issue a court is particularly qualified to decide. No further factual determination was required in any of these cases to decide that issue. The sole fact left to be determined in *Arnold* was whether Arnold's ex-husband would predecease her, a fact that would not affect the constitutionality of the statute. Our Supreme Court in *First United Methodist Church* also recognized that the designation of the church as a historical landmark had placed constraints on the church, hindering United Methodist from selling its property and using the proceeds to further its religious mission.[41]

Here, in contrast to the cited cases, there are no constitutional questions at issue. Moreover, the questions are

[36] 92 Wn.2d 844, 601 P.2d 943 (1979).

[37] *Clallam County Deputy Sheriff's Guild*, 92 Wn.2d at 847.

[38] *Clallam County Deputy Sheriff's Guild*, 92 Wn.2d at 849.

[39] *Clallam County Deputy Sheriff's Guild*, 92 Wn.2d at 849.

[40] *First United Methodist Church of Seattle v. Hearing Exam'r*, 129 Wn.2d 238, 916 P.2d 374 (1996).

[41] *First United Methodist Church*, 129 Wn.2d at 245.

primarily factual, not legal. Further factual development is necessary. The Neighbors have made no showing of exceptional hardship.

The Neighbors also quote this court's statement in *Neighbors & Friends of Viretta Park* that "we believe that the trial court has the authority, upon a proper showing of figurative foot-dragging, to set reasonable time limitations" on the city and that "judicial intervention might become warranted in the face of any future unreasonable delays in entry of a final administrative decision."[42] We need not decide whether that dictum applies here. The Neighbors have not made a showing of "figurative foot-dragging" by the County.

We have carefully reviewed the Neighbors' other arguments and citations regarding ripeness. They are unpersuasive.

In sum, this case is not the proper subject of declaratory relief. There is a completely adequate alternative remedy, LUPA. That option is available to the Neighbors once the County makes a "land use decision" within the meaning of governing statutes. The mere fact that such a decision has not as yet been made does not make the LUPA remedy inadequate.

The County, Cadman and Weyerhaeuser also argue that a declaratory judgment action may not be employed to challenge the application or administration of a statute. Because we have decided on other grounds that a declaratory judgment action is inappropriate, we need not reach that argument.

## Conflict of Interest

The Neighbors argue that the court should impose its view of whether a CUP is required before the County makes a decision because the County has a clear conflict of interest. According to the Neighbors, it would be futile to

---

[42] *Neighbors & Friends*, 87 Wn. App. at 384.

wait for the County to make a decision against its own interests. We reject this highly unusual request.

■ The Neighbors cite a series of cases relating to futility, none of which considers a declaratory judgment action. Futility is generally raised in the context of an appeal of a decision where the appellant has failed to exhaust administrative remedies and pleads that exhausting these remedies would be futile. The question of futility is one for the court.[43] But even the policies underlying exhaustion impose a substantial burden on a litigant attempting to show futility.[44] The factual circumstances of a case rarely justify a finding of futility.[45]

The court in *Orion Corp. v. State*[46] held that the facts of the case justified a finding of futility. But there the State and County governments had made policy choices, embodied in legislation and agency action, which would have prevented any development of Orion's land.[47] Even if the County's conflict of interest motivated its delay in making a decision in this case, as the Neighbors allege, they fail to show that the County necessarily will not follow the ordinance and make a decision.

The majority of the other cases they cite discuss the appearance of fairness doctrine.[48] As the County correctly points out, application of the appearance of fairness doctrine is limited to review of quasi-judicial actions of local

[43] *Citizens for Clean Air v. City of Spokane*, 114 Wn.2d 20, 30, 785 P.2d 447 (1990).

[44] *Citizens for Clean Air*, 114 Wn.2d at 31.

[45] *Estate of Friedman v. Pierce County*, 112 Wn.2d 68, 77, 768 P.2d 462 (1989).

[46] 103 Wn.2d 441, 693 P.2d 1369 (1985), *cert. denied*, 486 U.S. 1022 (1988).

[47] *Orion*, 103 Wn.2d at 459 ("Orion's land has been designated a shoreline of statewide significance . . . ; recognized as an area of statewide concern under the Washington State Coastal Zone Management Program; and included in an estuarine sanctuary that is dedicated to long-term maintenance of the ecosystem.").

[48] *Buell v. City of Bremerton*, 80 Wn.2d 518, 495 P.2d 1358 (1972); *Swift v. Island County*, 87 Wn.2d 348, 552 P.2d 175 (1976); *Narrowsview Pres. Ass'n v. City of Tacoma*, 84 Wn.2d 416, 526 P.2d 897 (1974); *Alger v. City of Mukilteo*, 107 Wn.2d 541, 730 P.2d 1333 (1987).

decision-making bodies.[49] *Jackstadt v. Washington State Patrol* applies the provisions of the Administrative Procedures Act regarding disqualification of reviewing officers in adjudicative proceedings.[50] The Neighbors do not argue that that statute governs this decision. *Ritter v. Board of Commissioners*[51] considers the disqualification of a single member of an adjudicative board, not the disqualification of an entire agency. Altogether these cases provide a good survey of the many situations in which an impartial decision maker is required. They do not provide authority for removing the decision from DDES in this case. None of the cases cited holds that an agency, as a whole, should not be allowed to proceed with this sort of decision because of suggestions of conflict of interest.

We affirm the order dismissing the case.

AGID, C.J., and GROSSE, J., concur.

---

[49] RCW 42.36.010 ("Quasi-judicial actions of local decision-making bodies are those actions of the legislative body, planning commission, hearing examiner, zoning adjuster, board of adjustment, or boards which determine the legal rights, duties, or privileges of specific parties in a hearing or other contested case proceeding.").

[50] *Jackstadt v. Wash. State Patrol*, 96 Wn. App. 501, 976 P.2d 190 (1999).

[51] 96 Wn.2d 503, 637 P.2d 940 (1981).