[No. 20300–2–I. Division One. November 14, 1988.]

R/L ASSOCIATES, INC., *Appellant,* v. M. MARGARET KLOCKARS, *Respondent.*

*Richard B. Sanders,* for appellant.

*Douglas N. Jewett, City Attorney,* and *Judith B. Barbour, Assistant,* for respondent.

SWANSON, J.—Quaere: When does a lot boundary adjustment create an additional "lot" or "site" for purposes of the Seattle Municipal Code? R/L Associates, Inc. (R/L), a Washington corporation, appeals from a superior court judgment affirming an adverse resolution of this question.

R/L owns two adjacent platted lots (lots 1 and 2) located at 9058 Burke Avenue North in Seattle. The lots, which together comprise 7,800 square feet, are in a single–family zone; current regulations establish a minimum building lot size of 5,000 square feet (SF 5000). The platted lot line

separating lots 1 and 2 runs east–west. A single–family res-
idence occupies the middle of the eastern portion of the
parcel, straddling the lot lines.

In February 1986, Robert Hale, president of R/L, applied
to the City of Seattle for a lot boundary adjustment pursu-
ant to chapter 23.28 of the Seattle Municipal Code (SMC).
Hale proposed to shift the lot line 90 degrees from east–
west so that it would bisect the parcel in a north–south
direction, thereby placing the existing house completely on
a separate lot and establishing a second lot for another sin-
gle–family residence.

R/L eventually sought a formal interpretation by the
Director of the Seattle Department of Construction and
Land Use (DCLU). On August 25, 1986, the Director filed a
written interpretation, denying the application. The Direc-
tor concluded that the location of the existing house, strad-
dling the boundary between the two lots effectively merged
the two platted lots into a single building site. The Director
reasoned that the proposed boundary adjustment created,
in effect, an additional building site where only one existed
before. Such a result, the Director concluded, constituted a
"plain violation of [SMC] 23.28.010 and 23.28.030, both of
which state that no additional lot, tract, parcel, or site may
be created by the proposed adjustment." The Director fur-
ther concluded that the proposed adjustment would cause
the existing house to violate rear yard setback require-
ments.

R/L appealed the Director's interpretation to the city
hearing examiner. A hearing on the matter, conducted by
Deputy Hearing Examiner M. Margaret Klockars, was held
on October 15, 1986. The primary participants at the hear-
ing were Robert Hale, R/L's president, and Guy Fletcher,
representing the Director. Hale argued that if the house on
the two lots were removed or demolished, he would be
entitled to build on both existing lots. Hale further main-
tained that the Director's interpretation was wasteful and
contrary to reason. Fletcher acknowledged that the City's

position rested on a "very technical reading" of the code, but maintained that a short plat was the appropriate procedure, not a lot boundary adjustment, since the proposed change effectively created an additional building site. Fletcher also acknowledged that R/L would probably be entitled to build on both existing lots if the present house were moved or destroyed.[1]

The hearing examiner's written decision affirming the Director's interpretation, including findings of fact and conclusions, was filed on October 30, 1986. A writ of certiorari was issued on November 20, 1986. Following a hearing on January 26, 1987, the trial court affirmed the hearing examiner's decision and dismissed the writ.

 This court reviews the administrative action under the ""'arbitrary, capricious, or contrary to law"'" standard. *Mall, Inc. v. Seattle,* 108 Wn.2d 369, 374, 739 P.2d 668 (1987) (quoting *Lewis v. Medina,* 87 Wn.2d 19, 548 P.2d 1093 (1976)). The question raised before this court is one of law: the correct interpretation of terms in the Seattle Municipal Code. *See Mall, Inc. v. Seattle, supra.* Considerable deference is accorded the construction of an ordinance by those officials charged with its enforcement. *Mall, Inc. v. Seattle, supra.*[2]

The focus of the instant appeal is SMC 23.28.030, which delineates the following criteria for summary approval of lot boundary adjustments:

The Director *shall* approve an application for a lot boundary adjustment if it is determined that:

---

[1]Although the record is not completely clear, the house was apparently constructed in 1947, before the area was annexed by the City. The hearing examiner concluded, apparently in error, that the house was constructed at a time when zoning regulations required combination of the lots for construction. See conclusion of law 7.

[2]In its brief, appellant relies heavily on "findings" expressed by the trial court during its oral opinion. However, the trial court is in the same position as this court and reviews only the administrative record; findings and conclusions by the trial court are "mere surplusage." *Grader v. Lynnwood,* 45 Wn. App. 876, 879, 728 P.2d 1057 (1986).

1. *No additional lot, tract, parcel, site or division will be created by the proposed adjustment;*
2. No lot is created which contains insufficient area and dimensions to meet the minimum requirements of the zone in which the lots affected are situated, except as provided in Section 23.44.010;
3. No lot is created which does not have adequate drainage, water supply and sanitary sewage disposal, and access for vehicles, utilities and fire protection;
4. *The lot boundary adjustment is consistent with applicable provisions of the Land Use Code.*

(Italics ours.) This provision is based upon a similar statute. *See* former RCW 58.17.040.[3] The only term in SMC 23.28.030 that is defined is "lot," which means:

a platted or unplatted parcel or parcels of land abutting upon and accessible from a private or public street sufficiently improved for vehicle travel or abutting upon and accessible from an exclusive, unobstructed permanent access easement. A lot may not be divided by a street or alley . . .

SMC 23.84.024.[4]

R/L argues that its proposed lot boundary adjustment

---

[3]Former RCW 58.17.040(6), in effect at the time of the proceedings below, exempted from subdivision requirements

[a] division made for the purpose of adjusting boundary lines which does not create any additional lot, tract, parcel, site, or division nor create any lot, tract, parcel, site, or division which contains insufficient area and dimension to meet minimum requirements for width and area for a building site . . .

RCW 58.17.040(6) has since been amended. *See* Laws of 1987, ch. 108, § 1; ch. 354, § 1.

[4]Apparently, the sole appellate decision in this state addressing lot boundary adjustments is *Island Cy. v. Dillingham Dev. Co.,* 99 Wn.2d 215, 662 P.2d 32 (1983). In *Dillingham,* our Supreme Court held that a party's aggregation of 400 substandard lots into fewer, but substantially different lots meeting current size regulations was a boundary adjustment that did not create additional lots and, consequently, was exempt from subdivision requirements. *Dillingham* is of little assistance in the instant case because it involved the creation of fewer, but larger, lots. Moreover, the court's analysis of the boundary adjustment procedure is sketchy. The court does not address the purposes underlying boundary adjustment procedures. *See* R. Settle, *Washington Land Use and Environmental Law and Practice* 94 (1983).

does not create an additional "lot, tract, parcel, site or division," reasoning that there are now two platted "lots" or "sites" and that there would be two "lots" or "sites" after the proposed change. In effect, R/L argues that "lot" and "site" have identical meanings and that the location of the existing dwelling is irrelevant. While superficially appealing, this argument ignores the substance of the proposed change, as well as the purposes underlying boundary adjustments.

In construing legislative enactments, this court attempts to ascribe meaning to every word; the legislative body is presumed not to have used superfluous words. *See State v. Fenter*, 89 Wn.2d 57, 60, 569 P.2d 67 (1977). Undefined terms are accorded their usual and ordinary meaning. *Department of Rev. v. Hoppe,* 82 Wn.2d 549, 552, 512 P.2d 1094 (1973).

As noted by the hearing examiner, a common meaning of the term "site" is "a piece of land considered from the standpoint of its use for some specified purpose." (Quoting *Webster's New World Dictionary* (2d College ed. 1978)); *see also Webster's Third New International Dictionary* 2128 (1969) ("a space of ground occupied or to be occupied by a building . . . land made suitable for building purposes by dividing into lots"); *Harris v. Consolidated Sch. Dist. 8 C, Dunklin Cy.,* 328 S.W.2d 646, 651 (Mo. 1959) ("The word 'site' normally means 'the place where anything is[.]'"). As presently developed, R/L's platted lots comprise only a single building site. Indeed, R/L's purpose in seeking a boundary adjustment is to create an additional building site. The status quo results not from any affirmative regulatory action, but rather from the existing structure's location on the boundary lines between the two platted lots. Approval of R/L's request would result in the creation of a second, *i.e.,* an additional, building site where only one existed previously. Viewed in this light we cannot say that the administrative decision is arbitrary, capricious, or contrary to law.

Although the meanings of "lot," "tract," "parcel," "site," and "division" overlap, we can find no support for R/L's assertion of a legislative desire to treat the terms as identical. Rather, we find that SMC 23.28.030 merely encompasses the various property designations that are potentially subject to boundary adjustments.

R/L's reliance on former SMC 23.44.010(B)(1) for the proposition that "lot" and "site" are identical is also misplaced. Former SMC 23.44.010(B)(1) provides for an exception to the required minimum lot area if

> [t]he lot was established as a separate building site in the public records of the county or City prior to July 24, 1957 by deed, contract of sale, mortgage, property tax segregation, platting or building permits.

Thus, contrary to R/L's position, a "lot" may or may not be a "site," depending on the circumstances.

■ The Director's interpretation of the code is also consistent with the purposes underlying lot boundary adjustments. SMC 23.28.010 provides:

> The purpose of this chapter is to provide a method for summary approval of lot boundary adjustments which do not create any additional lot, tract, parcel, site or division, while insuring that such lot boundary adjustment satisfies public concerns of health, safety, and welfare.

To "adjust" is to "settle or arrange; to free from differences or discrepancies." Black's Law Dictionary 40 (5th ed. 1979). It is therefore evident that a lot boundary adjustment is intended to apply to minor boundary changes, but not to changes that result in increased development or density otherwise regulated by the applicable land use code. R/L's argument ignores the fact that the proposed lots are substantially different from the two existing platted lots. The drastic boundary change proposed by R/L creates two essentially new lots.[5] Moreover, a lot boundary adjustment

---

[5]Thus, we question whether the proposed lots would qualify as lots established "as a separate building site in the public records of the county or City prior to July 24, 1957" for purposes of the minimum lot size exception of SMC 23.44-.010(B)(1)(a).

is a summary procedure that is not subject to the public scrutiny and control required by significant divisions of property; approval of the adjustment is mandatory when the criteria are met. SMC 23.28.030. For this reason, we believe boundary adjustment provisions should be strictly construed to effectuate their purposes. *See* R. Settle, *Washington Land Use and Environmental Law and Practice* 92 (1983). The lot boundary adjustment provides an efficient and low–cost procedure for minor or insignificant changes in property lines. If we were to focus scrutiny merely on the resulting quantity of lots, as urged by R/L, while ignoring the substance of the boundary changes, we would be subjecting the process to considerable abuse. *See* R. Settle, *Washington and Environmental Law and Practice, supra.*[6]

R/L's argument rests heavily on a speculative assumption that it would be entitled to build two houses on the property if the existing house were not there. However, R/L has presented no authority indicating that it has vested rights in developing the property in its original form, *i.e.,* two platted building sites. Nor has R/L presented any authority suggesting that the code provisions are to be construed and applied as though existing improvements were not present. Finally, R/L's argument obscures the fact that denial of its boundary adjustment application does not necessarily preclude further development on the property. As noted by the

---

[6]Our decision is supported by a 1986 Attorney General opinion construing former RCW 58.17.040(6). *See* AGO 6 (1986). The opinion addressed, *inter alia,* a situation in which a lot in a previously approved subdivision is divided, with one–half sold and attached to an existing parcel outside of the subdivision. The opinion concludes that such a proposal, although technically not creating an additional lot, would not fall within the boundary adjustment exception because of the substantial nature of the boundary change. AGO 6 (1986), at 5. The opinion cites a developer's need to change boundaries for the proper installation of utilities to two lots as an appropriate subject for a boundary adjustment.

hearing examiner, and acknowledged by Hale at the hearing, the short subdivision process remains available.[7]

R/L next contends that the City's interpretation, if upheld, constitutes an inverse condemnation by excessive regulation of its property for which it is entitled to compensation. A property owner who, as a consequence of governmental regulation, is deprived of economically reasonable use of the property may, under certain circumstances, be entitled to compensation for a regulatory taking. *See Agins v. Tiburon,* 447 U.S. 255, 65 L. Ed. 2d 106, 100 S. Ct. 2138 (1980).

The issue of regulatory takings and monetary compensation has been the subject of several recent decisions by the United States Supreme Court. *See Nollan v. California Coastal Comm'n,* ___ U.S. ___, 97 L. Ed. 2d 677, 107 S. Ct. 3141 (1987); *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 96 L. Ed. 2d 250, 107 S. Ct. 2378 (1987); *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 94 L. Ed. 2d 472, 107 S. Ct. 1232 (1987). After briefs in this case were filed, our Supreme Court handed down its own extensive analysis of the question. *Orion Corp. v. State,* 109 Wn.2d 621, 747 P.2d 1062 (1987), *cert. denied,* 108 S. Ct. 1996 (1988).

We cannot, however, reach the taking issue for purposes of this appeal, even if we assume that the question is properly presented. A claim that government regulations effect a taking "is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cy. Regional Planning*

---

[7]Our decision is not affected by the hearing examiner's finding that the "Director acknowledges that if the house did not exist, i.e., was demolished or removed, there would be two lots both of which *could* be building sites and to which lot boundary adjustment provisions *could* be applied . . ." (Italics ours.) Finding of fact 7. Although the finding is supported by Fletcher's testimony, no conclusions rested on the finding. The hypothetical status of R/L's two lots, had the present house not existed, was not an issue before the hearing examiner.

*Comm'n v. Hamilton Bank,* 473 U.S. 172, 186, 87 L. Ed. 2d 126, 105 S. Ct. 3108 (1986); *Orion Corp. v. State, supra.*

The administrative decision challenged here involved only a determination that R/L was not entitled to a lot boundary adjustment and did not foreclose all further development of the property. As expressly noted by the hearing examiner, and acknowledged by R/L at the hearing, the short plat or short subdivision procedure remains available. R/L does not contend that pursuit of alternative procedures would be futile. We cannot evaluate a "taking" claim until there is a final determination that R/L has been denied some reasonable beneficial use of its land. *See Williamson Cy.,* at 194.

The judgment is affirmed.

COLEMAN, A.C.J., and PEKELIS, J., concur.

Reconsideration denied February 14, 1989.

Review denied by Supreme Court May 9, 1989.