[No. 18929-5-III. Division Three. March 22, 2001.]

CHELAN COUNTY, ET AL., *Respondents*, v. MICHAEL NYKREIM, ET AL., *Appellants*.

*John M. Groen* (of *Groen, Stephens & Klinge, L.L.P.*), for appellants.

*Gary A. Riesen, Prosecuting Attorney*, and *Susan E. Hinkle, Deputy*; *Mark R. Johnson* (of *Karr Tuttle Campbell*); and *Joseph J. Straus* (of *Barokas & Martin*), for respondents.

*Stephen H.G. Overstreet* on behalf of Building Industry Association of Washington, amicus curiae.

*Eric P. Gillett* on behalf of Washington Land Title Association, amicus curiae.

*Larry D. Stout* on behalf of Washington Association of Realtors, amicus curiae.

*James M. Johnson* on behalf of Washington State Farm Bureau, amicus curiae.

KURTZ, C.J. — Three married couples—Michael and Lori Nykreim, Rick and Vickie Whitney, and William and Jane Kelly (hereinafter referred to as the Nykreims)—purchased a piece of property in Chelan County as tenants in common and applied for a boundary line adjustment (BLA). In their BLA application, the Nykreims represented that the property consisted of three "parcels" even though the deed referenced an undivided quarter-quarter section. The Director of the Chelan County Planning Department approved the BLA by signing a certificate of exemption. The planning director also required the Nykreims to execute and file notices of title for each of the three parcels. Ten months later, the County withdrew the certificate of exemption after neighbors questioned its validity. The County subsequently filed this action seeking declaratory relief. Several neighbors filed a complaint to intervene. On summary judgment, the court concluded the BLA was void and invalid, and dismissed the Nykreims' counterclaims for damages under chapter 64.40 RCW and 42 U.S.C. § 1983.

On appeal, we must decide: (1) whether the BLA was valid; (2) whether the invalid BLA could be revoked; (3) whether an invalid BLA can be revoked after notices of title have been filed; (4) whether this action is barred because the County failed to comply with the Land-Use Petition Act (LUPA); (5) whether this action is barred because it was not filed within a reasonable time after the BLA was approved; and (6) whether the court erred in dismissing the counterclaims. The Nykreims also request an award of attorney fees under RCW 64.40.020(2). We affirm the judgment of the superior court and we deny fees to the Nykreims because they are not the prevailing party.

## FACTS

In July 1997, three married couples purchased property

in Chelan County from James S. Kempton as tenants in common. The property is approximately 40 acres in size and is located about four miles outside Leavenworth. The property is traversed at one location by Icicle Road and at another location by Icicle Creek. In the deed conveying the property to the three couples, the property is described as the Northwest Quarter of the Southeast Quarter of Section 27, Township 24 North, Range 17 E.W.M., Chelan County, Washington. Only one deed was issued at the time of the conveyance and there was only one tax parcel number. There is no evidence indicating that Mr. Kempton had previously divided the property or otherwise indicated that the property consisted of "Old Parcels A, B, and C."

In August 1997, the Nykreims applied for a boundary line adjustment. One of the criteria for approval of a boundary line adjustment is that the lot line adjustment does not create any new lots. RCW 58.17.040(6); Chelan County Subdivision Resolution, article III, section 302. In the BLA application, the Nykreims referred to the property as consisting of three "parcels," even though the deed referenced an undivided quarter-quarter section. The BLA application included descriptions of "Old Parcel A," "Old Parcel B," and "Old Parcel C."

The BLA application included a map depicting these "old" parcels.

The BLA application also included descriptions of the proposed "New Parcel A," "New Parcel B," and "New Parcel C." A second map depicted the location of the "new" parcels.

On October 9, 1997, the BLA was processed by John Harrington, who was then serving as the Director of the Chelan County Planning Department. Mr. Harrington approved the application by signing a certificate of exemption. Because the application was processed as a boundary line adjustment, there was no public notice or hearing.

The Nykreims contend that Mr. Harrington relied on section 200 of the Chelan County Subdivision Resolution when approving the Nykreims' BLA application. Mr. Harrington states in his affidavit that he believed that the application of section 200 of the Chelan County Subdivision Resolution resulted in three existing legal lots in the original parcel because the location of the stream and road created separate legal lots.

Mr. Harrington also apparently wanted to clarify that section 200 could not be applied to the parcels after the boundary line adjustment to create more lots based on the location of Icicle Creek or the county road. Consequently,

Mr. Harrington required the three couples to execute and record notices of title for each of the lots stating that the configuration of the three new lots could not be changed unless a subdivision, short subdivision, or boundary line adjustment was approved by the county planning department. The County prepared the notices of title that were filed the same day as the certificate of exemption, October 9, 1997.

Seven months later, in May 1998, the Nykreims applied for conditional use permits (CUPs) to construct three residential structures on "Original Lot A." Neighbors became aware of the proposed development and appeared at the Icicle Valley Design Review Committee hearing on July 20 to voice their objections. These neighbors raised concerns regarding the validity of the boundary adjustment and the possible use of the proposed structures as transient overnight rentals.

A few weeks later, Joseph Straus, a neighbor and an attorney, wrote a letter to Mr. Harrington asserting that the BLA was illegal. Copies of the letter were sent to various County officials and the Icicle Valley Design Review Committee. The County responded by indefinitely postponing the Design Review hearing. Additionally, on August 25, the County officially withdrew the certificate of exemption issued by Mr. Harrington. Meanwhile, the CUP applications were scheduled for consideration before the zoning adjustor. However, the zoning adjustor refused to take jurisdiction because the matter had not been reviewed by the Icicle Valley Design Review Committee as required under section 11.39B.040 of the Chelan County Comprehensive Zoning Resolution.

In December 1998, the County filed this action seeking declaratory relief finding the Nykreims' BLA certification and the notices of title null, void, and invalid. In May 1999, Mr. Strauss and several other neighbors sought to intervene by filing a complaint in intervention. The issues were resolved on summary judgment. The court revoked the Nykreims' BLA, finding the BLA to be void and invalid. The

court also dismissed the Nykreims' counterclaims for damages under chapter 64.40 RCW and 42 U.S.C. § 1983. The Nykreims appeal.

This court subsequently granted the following organizations leave to file an amicus curiae brief: the Building Industry Association of Washington, the Washington Land Title Association, the Washington Association of Realtors, and the Washington State Farm Bureau.

*Standard of Review.* Summary judgment is proper only when the pleadings, depositions, and admissions in the record, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). All facts and reasonable inferences are considered most favorably to the nonmoving party. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). An appellate court engages in the same inquiry as the trial court when reviewing an order for summary judgment. *Mountain Park Homeowners Ass'n v. Tydings,* 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

## ANALYSIS

*RCW 58.17.040 Exemptions.* Chapter 58.17 RCW regulates the subdivision of land in Washington. Chapter 58.17 RCW was adopted because the Legislature found that "the process by which land is divided is a matter of state concern and should,be administered in a uniform manner by cities, towns, and counties throughout the state." RCW 58.17.010.

 RCW 58.17.040 sets forth exemptions from subdivision regulations and requirements. Subsection (6) relates to boundary line adjustments. Specifically, subsection (6) provides that the requirements of chapter 58.17 RCW do not apply to:

(6) A division made for the purpose of alteration by adjusting boundary lines, between platted or unplatted *lots* or both, which does not create any additional lot, tract, parcel, site, or

division nor create any lot, tract, parcel, site, or division which contains insufficient area and dimension to meet minimum requirements for width and area for a building site[.]

RCW 58.17.040(6) (emphasis added).

Under RCW 58.17.040(6), boundary line adjustments apply only between "lots." The term "lot" is defined in RCW 58.17.020(9) as follows:

"Lot" is a fractional part of divided lands having fixed boundaries, being of sufficient area and dimension to meet minimum zoning requirements for width and area. The term shall include tracts or parcels.

The property in question sits in the Forest Resource Zone governed by chapter 11.15 of the Chelan County Code that requires lot sizes of 20 acres or more and provides for only one dwelling per lot or parcel. Chelan County Code 11.15-.030 and .070. The Nykreims' BLA application indicates that "Old Parcels" B and C contain less than 20 acres. The BLA application also indicates that none of the "New Parcels" contain 20 acres.

The BLA approved here was improper for two reasons. First, there is no indication that "Old Parcels" A, B, and C, were lots within the definition contained in RCW 58.17-.020(9). Hence, the BLA was improper because it created three lots where previously there had been only one lot. Second, even if we assume these parcels were lots for purposes of RCW 58.17.020(9), a boundary line adjustment resulting in "New Parcels" A, B, and C, was improper because none of the new lots was of sufficient area to meet minimum zoning requirements for width and area. In sum, the BLA proposed here was improper and was not exempt under RCW 58.17.040(6).

 *County Procedure.* RCW 58.17.060 directs local legislative bodies to enact procedures for summary approval of short plats or short subdivisions. Similarly, the procedures for approving boundary line adjustments are not defined by chapter 58.17 RCW; instead, local authorities must establish their own procedures for the consider-

ation and review of requests for boundary line adjustments. Case law suggests that boundary line adjustments will be evaluated based on the type of procedure adopted by the local authorities. *See R/L Assocs. v. Klockars,* 52 Wn. App. 726, 729, 763 P.2d 1244 (1988); *Cox v. City of Lynnwood,* 72 Wn. App. 1, 7, 863 P.2d 578 (1993). The underlying assumption is that "boundary [line] adjustment provides an efficient and low-cost procedure for minor or insignificant changes in property lines." *R/L Assocs.,* 52 Wn. App. at 733.

Based on the record here, it appears that Chelan County has not adopted a clearly defined procedure for the consideration and review of boundary line adjustments. Chelan County has adopted a subdivision resolution regulating the subdivision of land within the county. Article I, section 100, of the Chelan County Subdivision Resolution defines the scope of the subdivision resolution and establishes that the resolution is applicable to "[e]very division of land for purposes of lease, sale, or transfer into two or more lots, parcels or tracts in the unincorporated areas of Chelan County . . . ." Section 302 contains exemptions to the Chelan County Subdivision Resolution. "A division made for the purpose of adjusting boundary lines" between lots is exempted from the subdivision resolution pursuant to section 302(8). Article II, section 200 of the Chelan County Subdivision Resolution adopts the same definition of "lot" contained in RCW 58.17.020. Consequently, the BLA attempted here does not fall within the exemptions set forth in the Chelan County Subdivision Resolution or RCW 58-.17.040.

■ The Nykreims contend that "Old Parcels A and B" constitute lots based on language found in section 200 of the Chelan County Subdivision Resolution. Section 200 of the resolution defines the word "land" as follows:

Land, as a unit for determining subdivision, means all contiguous real property in one ownership, but not including *parcels of record* prior to the adoption of this ordinance and not including parcels separated by a public road or stream in excess of 20 cubic feet per second mean annual flow. A parcel shall be

considered of record if recorded in the office of the Chelan County Auditor and if the disposition of said parcel is in conformance to the subdivision regulation in force at the time of filing.

(Emphasis in original.) Under the Nykreims' interpretation of this provision, separate parcels are created within one ownership where the parcels are separated by a public road or stream in excess of 20 cubic feet per second mean flow. This interpretation of section 200 was adopted by Mr. Harrington and apparently implemented during his tenure as planning director. However, the language concerning parcels separated by a road or stream relates to the definition of land "as a unit for determining subdivision," and does not create "lots" based on the location of a road or stream. Moreover, a "lot" must be of sufficient area and dimensions to meet minimum zoning requirements for width and area. "Old Parcels" B and C do not meet these requirements. Even if we assume section 200 authorizes "Old Parcel" A, which does meet minimum zoning requirements, this division of the property was not exempt from the platting requirements under chapter 58.17 RCW. In other words, section 200 cannot be read to create "Old Parcels" on the Nykreims' property.

▉ More importantly, any mechanism dividing this property into separate parcels had to comply with chapter 58.17 RCW. Section 200 of the Chelan County Subdivision Resolution, as applied by the Nykreims and Mr. Harrington, creates three "New Parcels" in violation of RCW 58.17-.040(6). The BLA proposed by the Nykreims was not exempted from the platting requirements of chapter 58.17 RCW because it created three lots where previously there had been only one. In short, the BLA proposed by the Nykreims violated the Chelan County Subdivision Resolution and chapter 58.17 RCW.

▉ In urging this court to reinstate the BLA, the Nykreims maintain that this court must grant deference to Mr. Harrington's interpretation of section 200. This argument is unpersuasive. Courts grant deference to a statute's

interpretation by the agency charged with its administration in the absence of a compelling indication that such interpretation conflicts with the legislative intent. *Marquis v. City of Spokane*, 130 Wn.2d 97, 111, 922 P.2d 43 (1996). Mr. Harrington's interpretation of the Chelan County Subdivision Resolution clearly conflicts with the language and intent of chapter 58.17 RCW and the Chelan County Subdivision Resolution.

 *Revocation of the BLA.* It is well established that zoning ordinances are a permissible exercise of police power and that the public has an interest in zoning. *Lewis v. City of Medina*, 87 Wn.2d 19, 23, 548 P.2d 1093 (1976); *Buechel v. Dep't of Ecology*, 125 Wn.2d 196, 211, 884 P.2d 910 (1994). Governmental zoning power may not be forfeited by actions of local officials in disregard of statutes and ordinances. *City of Mercer Island v. Steinmann*, 9 Wn. App. 479, 483, 513 P.2d 80 (1973) (citing *V.F. Zahodiakin Eng'g Corp. v. Zoning Bd.*, 8 N.J. 386, 396, 86 A.2d 127, 132 (1952)). The requirements of zoning ordinances cannot be avoided for the benefit of an individual applicant. *See Buechel*, 125 Wn.2d at 211. Like zoning power, platting power has also been delegated to the legislative authority of local governments. *See* RCW 58.17.060; *Lince v. City of Bremerton*, 25 Wn. App. 309, 313, 607 P.2d 329 (1980).

 If a building permit is invalid, it is void and confers no rights. *Nolan v. Blackwell*, 123 Wash. 504, 506, 212 P. 1048 (1923). No rights may vest where an application for a building permit or the permit issued fails to conform to the zoning or building regulations. *Eastlake Cmty. Council v. Roanoke Assocs.*, 82 Wn.2d 475, 481, 513 P.2d 36 (1973). A litigant has no right to benefit from unlawful administrative conduct when the public interest will suffer. *Id.* at 484. Significantly, the "evil" perpetrated by this disregard of legislation is the same regardless of whether the source of the invalidity is the wrongdoing of the applicant, the administrator, or both. *Id.* at 483-84.

The County argues that a boundary line adjustment is analogous to a building permit and may be revoked if

invalid. Acknowledging that invalid building permits are void, the Nykreims maintain that this rule should not be extended to boundary line adjustments because these decisions are quasi-judicial rather than ministerial. The Nykreims assert that principles of res judicata protect a final quasi-judicial decision made by an agency approving the adjustment of a boundary line. They argue that the BLA cannot be revoked merely because the new Chelan County Planning Director disagrees with the BLA approved by Mr. Harrington.

 The determination of whether a decision is quasi-judicial involves the application of a four-part test:

"(1) whether a court could have been charged with making the agency's decision; (2) whether the action is one which historically has been performed by courts; (3) whether the action involves the application of existing law to past or present facts for the purpose of declaring or enforcing liability; and (4) whether the action resembles the ordinary business of courts as opposed to that of legislators or administrators."

*Williams v. Seattle Sch. Dist. No. 1*, 97 Wn.2d 215, 218-19, 643 P.2d 426 (1982) (quoting *Wash. Fed'n of State Employees v. State Pers. Bd.*, 23 Wn. App. 142, 145-46, 594 P.2d 1375 (1979)).

 Applying this test, it is clear Mr. Harrington's approval of the Nykreims' BLA application was not a quasi-judicial decision. Under section 108, the planning director is vested with the duty of administering subdivision and platting regulations and may prepare and require the use of forms in connection with the administration of these regulations. Apparently, Chelan County has not established a procedure for reviewing boundary line adjustments, which are exempted from the subdivision regulations. However, the County does provide forms that must be completed in order to obtain a boundary line adjustment.

The instructions pertaining to boundary line adjustments read as follows:

The adjustment must meet ALL of the following criteria:

- The adjustment does not create an additional lot, tract, parcel, site or division of land.

- The adjustment does not result in the creation of any lot, tract, parcel, site or division which contains insufficient area and dimensions to meet the minimum requirements of the zone in which the lots affected are situated.

- The adjustment does not involve the relocation of building sites, existing or anticipated access easements, utilities, septic tanks and drainfields or other features.

Clerk's Papers (CP) at 427. Language in the boundary line adjustment application sets forth the two steps to be completed before the form will be forwarded to the auditor for recordation:

Step 1: Submit *completed* form to Chelan County Planning Department, 411 Washington Street, Wenatchee, WA 98801, with a recording fee ($8.00 for first page and $1.00 for each additional page for 8½ "by 11" or 8½ "by 14" paper) in the form of a check payable to the *Chelan County Auditor*.

Step 2: Upon a determination that the proposed adjustment meets the criteria in Step 1, and contains the information called for in Step 2, the form will be forwarded to the Chelan County Auditor for recordation.

CP at 221 (emphasis in original).

Additionally, language in the application for the certificate of exemption indicates that the certificate of exemption can be withdrawn:

9. SIGNATURES. I (we), the undersigned, swear under penalty of perjury that the above responses and accompanying documentation are made truthfully and to the best of my (our) knowledge. I (we) also agree to furnish any further documentation that may be required by the Planning Department. *I (we) further understand that, should there by any willful misrepresentation or willful lack of full disclosure on my (our) part, Chelan County may withdraw any approval that it might issue in reliance on this application.* FURTHER, I (We) also have provided written permission in the table below from all involved property owners and fee-purchasers. I (We) understand that by

signing below, that upon approval by the County Planning Dept and filing with the County Auditor and County Assessor, all new easements and lots will be created as described in this CE application.

CP at 244 (emphasis added). An agent for the Nykreims signed this portion of the application.

The Nykreims suggest that Mr. Harrington's decision was quasi-judicial because he based his decision to grant the BLA on an interpretation of section 200. However, in his affidavit, Mr. Harrington does not indicate that he approved the BLA application based solely on his interpretation of section 200. More importantly, the Nykreims provide no authority indicating that Mr. Harrington had the authority to deny the BLA application if it appeared from the face of the application that the criteria had not been met.

The Nykreims rely on three cases to support their argument that Mr. Harrington's processing of the BLA was quasi-judicial rather than ministerial, *Cox v. City of Lynnwood*, 72 Wn. App. 1, 7, 863 P.2d 578 (1993); *R/L Assocs. v. Klockars*, 52 Wn. App. 726, 729, 763 P.2d 1244 (1988); *Miller v. City of Port Angeles*, 38 Wn. App. 904, 691 P.2d 229 (1984). These cases are distinguishable based on the procedural posture of each case.

In *R/L Associates*, R/L sought a boundary line adjustment by requesting a formal interpretation by the Director of the Seattle Department of Construction and Land Use. *R/L Assocs.*, 52 Wn. App. at 728. When the director filed a written interpretation denying the application, R/L appealed the director's interpretation to the city hearing examiner. *Id.* On appeal, the *R/L Associates* court considered the quasi-judicial decision issued by the hearing examiner. *Id.* at 729. The *Cox* court determined that the *denial* of a boundary line adjustment was not ministerial because the city looked beyond the provisions of its own code and denied the boundary line adjustment based on the purposes of the short and long plat provisions. *Cox*, 72 Wn. App. at 11. The *Cox* court concluded that such policy

decisions were quasi-judicial rather than ministerial. *Id.* However, in *Cox* it was undisputed that the boundary adjustment application complied with the applicable ordinance and the planning director knew or should have known that the denial of the application was unlawful or in excess of authority. *Id.* at 6-7. The *Miller* court determined that "[a] decision to grant, deny or impose conditions upon a proposed plat is administrative or quasi judicial in nature." *Miller*, 38 Wn. App. at 908. Platting requirements are set forth in chapter 58.17 RCW.

Because the processing of the Nykreims' BLA was ministerial, the principles of res judicata do not apply. The term res judicata encompasses claim preclusion, also referred to as res judicata, and issue preclusion, also known as collateral estoppel. *See Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 507, 745 P.2d 858 (1987). The principles of res judicata apply only when an issue or a claim has been litigated. The Chelan County Subdivision Resolution apparently does not require or provide for the litigation or administrative review of any issues or claims here.

The Nykreims next argue that the public interest in administrative finality would be better served if local officials were prevented from revoking invalid boundary line adjustments. In making this argument, the Nykreims misapply the principles of res judicata and administrative finality. Administrative tribunals are creatures of the legislative bodies that create them and, with limited exceptions, lack inherent power to reconsider their own final decisions. *St. Joseph Hosp. & Health Care Ctr. v. Dep't of Health*, 125 Wn.2d 733, 743, 887 P.2d 891 (1995); *Lejeune v. Clallam County*, 64 Wn. App. 257, 270-71, 823 P.2d 1144 (1992). Consequently, when an administrative tribunal exercises quasi-judicial authority and renders a final decision, principles of res judicata apply and the decision can be changed only through the appellate process. *St. Joseph Hosp.*, 125 Wn.2d at 744. Because the approval of the BLA here was not a quasi-judicial administrative decision, the

decision was not "final" and the principles of res judicata do not apply.

The cases cited by the Nykreims in support of their "administrative finality" argument are not helpful. First, all of these cases involve a challenge to a final order issued after a hearing in a quasi-judicial forum. Second, in many of these cases the court was examining the grant of jurisdiction to the administrative body to determine whether it had jurisdiction to reconsider its decision. This type of analysis is not applicable here and does not support the argument that the County lacked the authority to withdraw an invalid boundary line adjustment.

The Nykreims and amici contend *Knestis v. Unemployment Compensation & Placement Division*, 16 Wn.2d 577, 581, 134 P.2d 76 (1943) is dispositive. They maintain that *Knestis* establishes that an agency cannot approve an application and later claim that the application was granted under an erroneous interpretation of law. *Knestis* is distinguishable.

In *Knestis*, the unemployment compensation and placement division granted an employer's petition for termination of unemployment insurance based on a finding that the employer was not a "liable employer" under the applicable statute. *Knestis*, 16 Wn.2d at 578. The decision rendered by the division was based on an opinion of the attorney general. *Id.* When the Washington Supreme Court later rendered a decision contrary to the attorney general opinion, the commissioner sought to vacate the previous order. *Id.* at 579. The *Knestis* court determined that the division's earlier determination that the employer was entitled to termination of coverage was final and conclusive unless set aside on appeal authorized by statute, or unless the earlier judgment should be vacated as a matter of equity. *Id.* at 581. The court noted that the division had the statutory authority to exercise original and exclusive jurisdiction in all cases to determine whether one is a liable employer, whether employees were entitled to unemployment compensation, and whether a compensable injury had occurred. *Id.* at 580-81.

While the *Knestis* opinion does not detail the procedure the division followed in making its original "finding," the other facts presented indicate that this process was quasi-judicial rather than ministerial. Mention of a finding and the discussion as to the extent of the division's original jurisdiction indicate that the *Knestis* court was considering the disposition of a final decision of an agency that had not been appealed in a timely manner. Because the matter had not been appealed—and the agency lacked the authority to reconsider its own decision—the decision was final and the agency could not later change its mind.

The Nykreims and amici also cite *Wenatchee Sportsmen Association v. Chelan County*, 141 Wn.2d 169, 4 P.3d 123 (2000), a LUPA case, for the proposition that an unlawful approval is final if not timely appealed. *Sportsmen Association* is also distinguishable. The *Sportsmen Association* court concluded that the association's failure to file a timely LUPA challenge to the county's prior approval of a site-specific rezone of the property barred the association from challenging the validity of the rezone in the present LUPA action concerning the approval of a plat application. The site-specific rezone in *Sportsmen Association* was a quasi-judicial res judicata decision. *Sportsmen Association* merely applies the principle of administrative finality that is not applicable here.

In short, the Nykreims' arguments related to administrative finality do not provide a reason to treat an invalid boundary line adjustment any differently than an invalid building permit. Chapter 58.17 RCW fails to establish any standards for processing boundary line adjustments. The process adopted by Chelan County requires only ministerial action by the planning director and apparently provides no clear avenue of appeal. For this reason, the decision of the planning director was not a final quasi-judicial administrative decision and could be withdrawn if later found to be invalid. Of equal importance, the invalid BLA conferred no rights that would prevent a court from revoking the Nykreims' BLA.

*Property Interests.* The Nykreims next argue that an invalid boundary line adjustment should not be subject to revocation because, unlike a building permit, a boundary line adjustment redefines property interests and is subject to the recording act, RCW 65.08.070. The Nykreims point out that after the BLA was granted, the BLA and notices of title were filed providing notice as to the property's new status. The Nykreims maintain that the revocation of the BLA here would damage the integrity of the recording laws because purchasers would not be able to rely on recorded documents. The organizations filing the amicus brief assert that a policy permitting the retroactive revocation of boundary line adjustments would inject an element of chaos into Washington land titles. In their view, title insurance would become difficult to obtain because there would be no assurance of final and certain boundary line adjustments.

██ ██ "A properly recorded instrument supplies constructive notice of the rights created by the instrument and of the recitals in the instrument." 2 WASH. STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESKBOOK § 34.4(3) (3d ed. 1996). However, the mere fact that an instrument is recorded does not establish or change its effectiveness between the parties. REAL PROPERTY DESKBOOK, *supra*, at § 34.4(1). Significantly, neither the Nykreims nor the amici cite any authority establishing that a boundary line adjustment is a covenant that runs with the land. The notices of title here merely provide notice of the BLA. Recording the BLA does not establish its effectiveness. It follows then that the argument based on the recording of the BLA is an argument based on public policy rather than an argument based on the effectiveness of the BLA.

We understand that by permitting the revocation of a boundary line adjustment in appropriate instances, we are creating the possibility that an invalid boundary line adjustment will not be discovered until some time has passed and the property has been sold or transferred to new owners. Arguably, these purchasers are put on notice of potential problems when they discover a notice of title

detailing the boundary adjustment. Here, for example, a potential purchaser would have had notice of a title listing one parcel and a boundary line adjustment dividing the property into additional lots. Of equal importance, innocent purchasers would receive some protection under RCW 58.17.210, which reads, in part:

> No building permit, septic tank permit, or other development permit, shall be issued for any lot, tract, or parcel of land divided in violation of this chapter or local regulations adopted pursuant thereto unless the authority authorized to issue such permit finds that the public interest will not be adversely affected thereby. *The prohibition contained in this section shall not apply to an innocent purchaser for value without actual notice.*

(Emphasis added.) In other words, when the criteria for a boundary line adjustment is not met, there are remedies available to protect an innocent purchaser.

Here, there was no innocent purchaser. The Nykreims ask us to ignore the requirements of chapter 58.17 RCW so that they can accomplish a subdivision of property without complying with the platting requirements of chapter 58.17 RCW. The Nykreims can show no prejudice because they already owned the property when they requested the BLA and the validity of the BLA was challenged in a timely manner after the commencement of the CUP proceedings. While the County might want to reevaluate its procedure for processing and reviewing boundary line adjustments, the notices of title here did not validate an otherwise invalid BLA requested by the parties seeking relief.

*Nature of Proceeding.* The Nykreims next contend that this action must be dismissed because the County challenged the BLA through an action for declaratory judgment, rather than seeking a writ of review or filing a LUPA action.

RCW 36.70C.030(1) states, in part, that LUPA "replaces the writ of certiorari for appeal of land use decisions and shall be the exclusive means of judicial review of land use decisions . . . ." By petitioning under LUPA, a party seeks judicial review by asking the superior court to exer-

cise appellate jurisdiction. *Chaney v. Fetterly*, 100 Wn. App. 140, 142 n.2, 995 P.2d 1284, *review denied*, 11 P.3d 824 (2000). This appellate jurisdiction is not properly invoked unless all statutory procedural requirements have been met. *Overhulse Neighborhood Ass'n v. Thurston County*, 94 Wn. App. 593, 597, 972 P.2d 470 (1999). Even though LUPA provides an exclusive remedy in some instances, LUPA does not disrupt the original jurisdiction of superior court; a party invoking the original jurisdiction of superior court need not comply with the notice requirements of LUPA when the party is not seeking appellate review of a land use decision. *See Chaney*, 100 Wn. App. at 149-50. Declaratory judgments are governed by chapter 7.24 RCW, the uniform declaratory judgments act, which is to be liberally construed. RCW 7.24.120.

The Nykreims contend the County is barred from challenging the BLA because the County failed to file and serve a LUPA petition within 21 days of the decision as is required under RCW 36.70C.040(3). The County asserts that the Nykreims cannot raise this argument for the first time on appeal and, in the alternative, the County maintains that principles of waiver and invited error apply to prevent any consideration of the applicability of LUPA. Both parties are mistaken.

██ ██ Despite the County's arguments of waiver and invited error, we must address the question of whether LUPA applies because LUPA is jurisdictional. A challenge to the court's jurisdiction may be raised at any time. *Williams v. Poulsbo Rural Tel. Ass'n*, 87 Wn.2d 636, 642-43, 555 P.2d 1173 (1976); *Bour v. Johnson*, 80 Wn. App. 643, 646-47, 910 P.2d 548 (1996). If LUPA applies—and the County failed to file a LUPA petition—this court has no jurisdiction to proceed and must dismiss this action. But we conclude LUPA does not bar the action here.

██ Judicial review under LUPA is contemplated for decisions approving or disapproving a plat, but no specific provision discusses the review of decisions to dispense with platting requirements. RCW 58.17.180. Under LUPA, a

" '[l]and use decision' means a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination . . . ." RCW 36.70C-.020(1). A "land use decision" includes a final determination on an application for governmental approval, required by law, before real property may be modified. RCW 36.70C-.020(1)(a). The decision to approve a boundary line application is a determination modifying real property.

Even though the definition of a "land use decision" under LUPA does not clearly state that a final "land use decision" must be quasi-judicial rather than ministerial, RCW 36.70C.030(1) states that LUPA "replaces the writ of certiorari for appeal of land use decisions." The statutory writ of certiorari, sometimes referred to as the writ of review, is governed by chapter 7.16 RCW. RCW 7.16.030. The grounds for granting the writ of review are set forth in RCW 7.16.040, which reads as follows:

> A writ of review shall be granted by any court, except a municipal or district court, *when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction* of such tribunal, board or officer, or one acting illegally, *or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law*, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law.

(Emphasis added.) In short, LUPA is the exclusive means of review of quasi-judicial decisions, not ministerial decisions.

Pre-LUPA cases concluded that injunctive relief was available to parties seeking relief from zoning violations in circumstances where the acts of the governmental agency were ministerial and the official acted beyond his or her authority. *See, e.g., Radach v. Gunderson*, 39 Wn. App. 392, 695 P.2d 128 (1985) (injunction issued requiring that house be brought into compliance with zoning setback requirements despite fact that city had issued a building permit without noticing the violation); *City of Mercer Island v. Steinmann*, 9 Wn. App. 479, 513 P.2d 80 (1973) (injunctive relief available against zoning violation despite fact that

city had previously issued a building permit). In *Steinmann*, the court concluded that:

"The governmental zoning power may not be forfeited by the action of local officers in disregard of the statute and the ordinance. The public has an interest in zoning that cannot thus be set at naught. The plaintiff landowner is presumed to have known of the invalidity of the exception and to have acted at his peril."

*Id.* at 483 (quoting *V.F. Zahodiakin Eng'g Corp. v. Zoning Bd.*, 8 N.J. 386, 396, 86 A.2d 127, 132 (1952)). In short, the court concluded that the doctrine of equitable estoppel "will not be applied where its application would interfere with the discharge of governmental duties or where the officials on whose conduct estoppel is sought to be predicated acted beyond their power." *Steinmann*, 9 Wn. App. at 481.

The Nykreims suggest that the reasoning in *Radach* and *Steinmann* is no longer applicable in the post-LUPA setting. However, in *Larsen v. Town of Colton*, 94 Wn. App. 383, 973 P.2d 1066 (1999), the court applied this same reasoning in the post-LUPA context.

The Larsens obtained an injunction preventing their neighbors, the Tiltons, from building a garage or shop on their property. *Larsen*, 94 Wn. App. at 385. Arguing that LUPA superseded all other avenues of relief, the Tiltons appealed the court order granting the injunction. *Id.* at 390. The court concluded that LUPA did not apply because the Larsens lacked standing to appeal the issuance of the building permit under LUPA. *Id.* at 391. Citing *Radach*, the court agreed that an action for injunctive relief was an appropriate way for an aggrieved property owner to contest the erection of a structure they believe to be in violation of a zoning ordinance. *Larsen*, 94 Wn. App, at 391. The *Larsen* court also noted that applying LUPA would raise due process concerns if the 21-day limitation period were applied to all persons potentially affected or aggrieved by the issuance of a building permit. *Id.* at 391 n.6.

The *Larsen* reasoning is applicable here. Aggrieved par-

ties may challenge an invalid ministerial decision granting a boundary line adjustment when there is no showing that the party had an obligation to exhaust other administrative remedies that would result in a final "land use decision" reviewable only under LUPA.

 The Nykreims argue that even if the neighbors may bring an action for declaratory relief, the County cannot seek declaratory relief because the County had notice of the BLA decision. In making this argument, the Nykreims are confusing two parts of the *Larsen* decision. Once the *Larsen* court determined that an action for injunctive relief was proper, the *Larsen* court then addressed the question as to whether the action was untimely. The court concluded that a reasonable limitation should apply. *Larsen*, 94 Wn. App. at 393. Because the land use in question was a purely ministerial act, the *Larsen* court determined that actual or constructive knowledge of the building permit should be the triggering event for a reasonable limitation period. *Id*.

Here, the notice issue should be examined in connection with the question as to whether the action for declaratory relief was filed within a reasonable period. The County is not precluded from seeking a declaratory judgment revoking an unlawful ministerial decision made by a county officer. Governmental entities were parties in several of the cases challenging invalid permits. *See Buechel v. Dep't of Ecology*, 125 Wn.2d 196, 884 P.2d 910 (1994); *Steinmann*, 9 Wn. App. 479.

 The Nykreims next contend that even if an action for declaratory relief is proper, this action must be dismissed because it was not filed within a reasonable period. In *Brutsche v. City of Kent*, 78 Wn. App. 370, 380, 898 P.2d 319 (1995), the court concluded that where no other appeal period is prescribed by state statute or local ordinance, any land use appeal must be brought within 30 days of when the final decision was made. The *Larsen* court agreed that this short period was applicable to quasi-judicial decisions, but the *Larsen* court concluded that this short limitation period would not be reasonable when the land use decision was

purely ministerial because the aggrieved party may not have notice or knowledge of the decision. *Larsen*, 94 Wn. App. at 393.

The County and the neighbors here were unaware that the BLA was invalid until the issue was raised in connection with the Nykreims' CUP applications to construct residential structures on the property. Prior to considering the CUP applications, the matter had to be considered by the Icicle Valley Design Review Committee. The neighbors appeared at this hearing on July 20, 1998, and questioned the validity of the BLA. A few weeks later, Mr. Straus sent a letter to Mr. Harrington and other County officials. Once made aware of the problem, the County proceeded in a timely and reasonable manner. On August 25, the County withdrew the certificate of exemption; the zoning adjustor later refused to take jurisdiction over the CUP applications.

Even though the County did not file this action until December 1998, and the neighbors did not join the action until May 1999, this action was filed within a reasonable period because the County had already withdrawn the certificate of exemption and the Nykreims were well aware that the CUPs would not issue until the matter was resolved. Under the facts here, the Nykreims were not prejudiced by the County's decision to file this action in December. Additionally, the Nykreims offer no reason as to why they did not appeal the County's decision to withdraw the certification or the hearing examiner's refusal to consider the CUPs.

*Nykreims' Claim for Damages.* RCW 64.40.020(1) reads as follows:

> Owners of a property interest who have filed an application for a permit have an action for damages to obtain relief from acts of an agency which are *arbitrary, capricious, unlawful,* or exceed lawful authority, or relief from a failure to act within time limits established by law: PROVIDED, That *the action is unlawful* or in excess of lawful authority *only if the final decision of the agency was made with knowledge of its unlawfulness or that it was in excess of lawful authority, or it should*

*reasonably have been known to have been unlawful or in excess of lawful authority.*

(Emphasis added.)

The court properly dismissed the Nykreims' claim for damages under chapter 64.40 RCW. First, RCW 64.40-.010(6) defines an "act" to be "a final decision by an agency which places requirements, limitations, or conditions upon the use of real property in excess of those allowed by applicable regulations" or "the failure of an agency to act within time limits established by law in response to a property owner's application for a permit." Neither of these "acts" occurred here. Additionally, the BLA may not meet the definition of a "permit" under RCW 64.40.010(2). Under this provision, a "permit" is defined as "any governmental approval required by law before an owner of a property interest may improve, sell, transfer, or otherwise put real property to use." The Nykreims did not require a boundary line adjustment to use the property, they sought the boundary line adjustment to subdivide the property so that they could build three structures on the property instead of one structure.

The trial court determined that Mr. Harrington's approval of the BLA was not arbitrary and capricious. The Nykreims do not contest that conclusion and argue that the actions of Mr. Harrington were unlawful instead. Knowledge of unlawfulness is not required for all actions under RCW 64.40.020(1), but is required for a cause of action based on conduct that is unlawful or exceeds lawful authority. *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 112, 829 P.2d 746 (1992). The Nykreims do not contend that Mr. Harrington was aware that his approval of the BLA was invalid.

Affirmed; deny fees to the Nykreims.

BROWN and KATO, JJ., concur.

Review granted at 144 Wn.2d 1016 (2001).